■ In the Matter of ALVIN FRIEDMAN-KIEN, Respondent, v CITY OF NEW YORK et al., Appellants. — Order and judgment (one paper) of the Supreme Court, New York County (Cahn, J.), entered August 6, 1981 in a CPLR article 78 proceeding, which determined that the certificate of approval of reasonable cost (CRC) for purposes of section J51-2.5 of the New York City Administrative Code, issued by respondent-appellant New York City Housing Preservation Department (HPD) with regard to the rehabilitation of petitioner-respondent's premises was arbitrary, capricious and erroneous and remanded the matter to the HPD for reconsideration and issuance of a corrected CRC, reversed, on the law, without costs, and the petition is dismissed. In July, 1979, petitioner, the owner of a three-story building located at 109-111 Lexington Avenue in Manhattan, applied for a tax exemption and abatement pursuant to section J51-2.5 of the New York City Administrative Code. The application indicated that petitioner had expended approximately $186,000 in altering and improving the building which had contained a doctor's office on the first floor and a single class A dwelling unit on the two floors above. After rehabilitation, the building contained commercial space in the basement and two class A triplex apartments on the three floors above. Upon receipt of the application, respondent HPD, pursuant to section 5.5 of its rules, determined the reasonable cost of the rehabilitation by first calculating that $94,543 of petitioner's claimed costs were allowable for tax abatement pursuant to the HPD's itemized cost breakdown schedule. This determination took into account a 25% deduction for the cost of renovating the commercial space. The HPD then calculated the maximum dollar limit per unit pursuant to formula contained in its rehabilitation schedule to be $37,400, and issued a CRC in that amount pursuant to section E of that schedule which provides: "E. Maximum Amount of Tax Abatement: Tax Abatement shall not exceed 90 per cent of the lesser of (i) aggregate Reasonable [sic] Cost or (ii) the Dollar Limit, as determined pursuant to this Rehabilitation Schedule." Special Term held that it did not appear from the record that HPD properly considered the petitioner's actual costs of the alterations and improvements in determining the reasonableness of such costs, citing Deull v Housing & Dev. Admin. (40 AD2d 803). In Deull the Housing and Development Administration (HDA [now HPD]), relying on a maximum tax benefit schedule, calculated the reasonable cost of the applicant's alterations and improvements to be $43,100. The actual cost was $126,000. The property owner urged on the appeal that subdivision 4 of section 489 of the Real Property Tax Law, authorizing the adoption of rules and

regulations by local agencies, did not empower the agencies to establish maximum cost. This court held (p 803) that the HDA was not entitled to fix the allowable cost for the alterations and improvements based on a maximum tax benefit allowances schedule without considering their actual cost, and "without due consideration of whether or not the standard allowances were reasonably applicable to the particular alterations and improvements." In 1977, subdivision 4 of section 489 of the Real Property Tax Law was amended to require local agencies to establish maximum dollar limits for specified items of cost, and further provided that "[n]o costs in excess of such maximum dollar limits shall be considered in determining the benefits of this section." The New York City Council thereupon amended subdivision c of section J51-2.5 of the New York City Administrative Code to provide that the aggregate tax abatement for alterations or improvements shall not exceed the dollar limit per existing class A dwelling unit established by HPD's rules and regulations. Pursuant thereto, the HPD promulgated in its rules and regulations schedules of allowances for particular improvements and formulas for calculation of dollar limits to be applied in passing upon section J51-2.5 applications. From the foregoing, it seems clear that the Legislature and city council intended to repose with the local agency, herein the HPD, authority to establish dollar limits for alterations and improvements under the tax abatement program, relying on the agency's experience in these matters. Accordingly, the agency is not now circumscribed by "actual costs" in determining the allowable tax abatement. The courts should not disturb the agency's determination of maximum dollar limits in the absence of a clear demonstration that it is arbitrary and unreasonable in terms of the purpose of the J51 program, which is to increase the supply of moderate rental housing that meets satisfactory standards. (See Note, McKinney's Session Laws of NY, 1960, ch 968, p 1550.) The petitioner herein has not met this burden, if indeed the issue was even raised, which is not clear. We disagree further with Special Term's finding that it was erroneous for HPD to certify a dollar limit for the alterations and improvements under its rules and regulations on the stated ground that those dollar limits are applicable only to rehabilitation of (or conversion of a building to) a class A multiple dwelling, and petitioner's building is not a class A multiple dwelling as defined in subdivision 8 of section 4 of the Multiple Dwelling Law. Petitioner's building at all times consisted of one or two class A dwelling units over space used for commercial occupancy. When first enacted, section 489 of the Real Property Tax Law did not apply to that type of building; it applied only to multiple dwellings. In 1973 section 489 (subd 1, par [a], cl [2]) was amended to include in the tax abatement program buildings such as petitioner's. Whether by oversight or otherwise, HPD did not amend its regulations to provide that the existing formula for the establishment of a dollar limit for the rehabilitation of a class A multiple dwelling (rehabilitation schedule, § C) would apply also to rehabilitation of one or two class A dwelling units over commercial space. We find this omission to be without legal significance. Subdivision (a) of section 2.2 of HPD's rules and regulations has at all times required that the tax abatement for any building eligible under section J51-2.5 shall not exceed 90% of the aggregate cost limit established by HPD per class A dwelling unit. Clearly, neither the Legislature nor the city council intended to confer significantly greater tax benefits upon owners of buildings with one or two dwelling units above commercial space than upon owners of class A multiple dwellings as defined in the Multiple Dwelling Law. The courts will not construe statutes, or rules and regulations of a government agency in such a manner as to thwart the obvious legislative intent and reach absurd and unexpected consequences. (*Matter of Chatlos v McGoldrick*, 302 NY

380, 387-388; McKinney's Cons Laws of NY, Book 1, Statutes, §§ 92, 145, 147.) The HPD rationally construed its own regulations to apply the dollar limit formula for renovation of class A multiple dwellings to petitioner's building, thereby reaching a result consistent with the legislative intent. Therefore that construction should not have been disturbed by Special Term. (See *Matter of Bernstein v Toia,* 43 NY2d 437, 448.) We have considered the other contentions advanced by petitioner and find them to be without merit. Accordingly, the order and judgment entered August 6, 1981 is reversed and the petition is dismissed. Concur — Kupferman, J. P., Sandler, Sullivan, Lynch and Kassal, JJ.