In the Matter of ALLSTATE INSURANCE COMPANY, Appellant, v
PEARL LIBOW, Respondent.

Second Department, December 31, 1984

### APPEARANCES OF COUNSEL

*Benjamin Purvin* and *Suozzi, English & Cianciulli, P. C.*
(*J. Irwin Shapiro* and *Daniel Kolko* of counsel), for appellant.

*Simonson & Cohen, P. C.* (*Daniel Cohen* of counsel), for respondent.

### OPINION OF THE COURT

BOYERS, J.

The sole issue for our consideration today is whether subdivision 2-a of former section 167 of the Insurance Law (presently

Insurance Law, § 3420, subd [f], par [1]),* which prescribes certain minimum sums of uninsured motorist insurance for bodily injury ($10,000) or wrongful death ($50,000), should be construed as mandating a minimum aggregate insurance coverage of $60,000 where an individual sustains personal injuries arising out of an automobile accident and subsequently dies as a result. Based upon the pertinent statutory provisions, the legislative history, administrative interpretation by the Superintendent of Insurance and the applicable rules of statutory construction, we conclude that the Insurance Law mandates a total minimum insurance coverage for motor vehicle accidents causing personal injuries resulting in death, in the sum of $50,000.

In August, 1981, petitioner Allstate Insurance Company (Allstate) issued respondent's decedent Eugene Libow (the insured) an automobile liability insurance policy containing the standard uninsured motorist indorsement providing the $10,000/$50,000 minimum coverage required in New York State (see Insurance Law, former § 167, subd 2-a; Insurance Law, § 3420, subd [f], par [1]). The policy was renewed the following year, on or about August 2, 1982, the anniversary date.

Some 20 days thereafter, on August 22, 1982, the insured's automobile was struck in the rear while stopped at a red light by an unidentified "hit and run" vehicle. As a result, the insured, who was operating his car at the time, sustained severe spinal cord injuries and was rendered a quadriplegic. On or about August 27, 1982, he filed a "notice of intention to make claim" pursuant to the policy issued to him by petitioner Allstate. Tragically, the injured insured died as a result of his injuries on September 21, 1982.

Subsequently, respondent Pearl Libow, as surviving spouse and administratrix of the insured's estate, served a supplemental and amended notice of intention to make claim and, by demand served in February, 1983, she requested arbitration under the uninsured motorist provision of the Allstate policy. The amount claimed in the demand included $10,000 for conscious pain and suffering and $50,000 for death resulting from the hit-and-run accident, for a total of $60,000. By way of response, on February 14, 1983, Allstate commenced the instant proceeding to stay arbitration between the parties on the ground that the policy provided for only $50,000 on account of death, as required by statute. By order dated March 14, 1983, Special

---

* The Insurance Law of our State was completely recodified, without substantive change, effective September 1, 1984 (L 1984, ch 367; Insurance Law, § 102).

Term dismissed the petition holding that "[b]y the express terms of the insurance policy, dispute between the parties as to the amount of damages is to be settled by arbitration".

Thereafter, Allstate moved to reargue contending that "by statute [Insurance Law, former § 167, subd 2-a] and contract [respondent was] limited to a maximum claim of $50,000 for the injury and death of one person" and that the issue of whether respondent had the right to claim $60,000 on account of both personal injury to the decedent and death was a coverage question which should be determined by the court rather than the arbitrator. Respondent argued in response that the policy provided for arbitration in the event of dispute as to the amount of damages and that subdivision 2-a of former section 167 of the Insurance Law provided payments "not exceeding" $10,000 for bodily injury "and * * * not exceeding" $50,000 for the death of one person in any one accident; since the statute was written in the conjunctive and not in the disjunctive alternative, respondent was entitled to make a claim for both bodily injury to and the death of her husband in the total sum of $60,000. Respondent framed the following issues for the court to decide: (1) whether respondent was entitled to arbitration, and (2) whether subdivision 2-a of former section 167 was framed in the conjunctive or the disjunctive.

By order dated June 14, 1983, Justice Rubin granted reargument, agreed that the issue of the sum respondent might seek constituted a policy coverage question to be determined by the court, found that the recovery limitations of subdivision 2-a of former section 167 of the Insurance Law were not mutually exclusive and thus a claim could be made by respondent on account of both personal injury and death, and directed that the matter proceed to arbitration.

On July 28, 1983, the arbitrator, stating that he was compelled to follow the decision of Special Term awarded respondent $60,000. Subsequently, petitioner paid respondent $50,000 pursuant to a stipulation entered into by the parties on or about October 5, 1983.

On this limited appeal by petitioner, we find that Special Term erred in construing subdivision 2-a of former section 167 of the Insurance Law as permitting a claim on account of both personal injury and death where personal injury is sustained by an individual as a result of a hit-and-run automobile accident and that same individual dies as a result of his injuries. We find that under such circumstances, respondent's claim is limited to

a maximum award of $50,000 and thus modify the order appealed from accordingly.

I

Prior to its amendment, effective December 1, 1979 (L 1979, ch 665, § 11), subdivision 2-a of former section 167 of the Insurance Law provided for payments under the uninsured motorist indorsement of an insured's policy subject to a "limit of ten thousand dollars exclusive of interest and costs, on account of injury to, *or* death of, one person, in any one accident" (emphasis added). This statute was amended by chapter 665 of the Laws of 1979, together with various other sections of the Insurance Law and the Vehicle and Traffic Law (e.g., Insurance Law, §§ 610, 619, subd [a]; Vehicle and Traffic Law, § 250, subd 4, par a; § 311, subd 4, par [a]; §§ 333, 335, subd [a]; §§ 341, 345, subd [b], par [3]; § 370, subd 1, par [a]). The purpose of the amendments was to raise the maximum amounts of various statutorily mandated insurance coverage limits for motor vehicle accidents resulting in death. According to the memorandum of the Assembly Rules Committee (NY Legis Ann, 1979, pp 393-394): "[the] bill would increase the minimum mandatory coverages of bodily injury liability insurance from $10,000 per person/$20,000 per accident to $50,000 per person/$100,000 per accident *in cases of wrongful death only*. Appropriate sections of the Vehicle and Traffic Law and insurance law are amended to reflect the increase from $10,000 per person/$20,000 per accident to $50,000 per person/$100,000 per accident * * * The current limitations were promulgated in 1959. It is clear that the amount of insurance protection that was adequate in 1959 cannot be remotely close to adequate in 1979" (emphasis supplied).

Thus, it is clear that the intent of the Legislature in amending those statutes relating to insurance coverage for motor vehicle accidents resulting in death was to compensate for the inflation occurring between 1959 and 1979 by raising coverage for wrongful death to $50,000 per person and $100,000 per accident (see Lamel, Annual Survey of New York Law, Insurance Law, 32 Syracuse L Rev 369, 381).

Subdivision 2-a of former section 167 of the Insurance Law (presently Insurance Law, § 3420, subd [f], par [1]), requires that all motor vehicle insurance policies contain a provision for the payment of "all sums, not exceeding a maximum amount or limit of ten thousand dollars exclusive of interest and costs, on account of injury to *and* all sums, not exceeding a maximum amount or limit of fifty thousand dollars exclusive of interest and costs, on account of death of one person, in any one accident

* * * which the insured or his legal representative shall be entitled to recover as damages from an * * * unidentified motor vehicle which leaves the scene of an accident" (emphasis supplied). Respondent would persuade this court that the statute be construed as authorizing insurance coverage of up to $60,000 where injury is followed by death because the word "and" connects the provisions of the statute mandating $10,000 coverage for injury and $50,000 for death. We disagree.

The primary consideration of the court in the construction of statutory provisions is to ascertain and give effect to legislative intent (McKinney's Cons Laws of NY, Book 1, Statutes, § 92, subd a). In effecting that objective, the courts are first bound to ascertain such intent from a literal reading of the words and language in the statute itself (McKinney's Cons Laws of NY, Book 1, Statutes, § 92, subd b; § 94; see *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471, 479-480; *Matter of Albano v Kirby,* 36 NY2d 526, 529-530; *Drelich v Kenlyn Homes,* 86 AD2d 648, 649; *Matter of Butler v New York City Health & Hosps. Corp.,* 82 AD2d 136, 140). Further, where a statute is clear on its face and its words are possessed of a definite and precise meaning, resort to extrinsic matter, such as legislative history, is inappropriate (see *Giblin v Nassau County Med. Center,* 61 NY2d 67, 74; *Matter of Daniel C.,* 99 AD2d 35, 41, affd 63 NY2d 927; see, also, *Zaldin v Concord Hotel,* 48 NY2d 107, 113; McKinney's Cons Laws of NY, Book 1, Statutes, § 76, p 168; 2A Sutherland, Statutory Construction [Sands, 4th ed], §§ 46.01, 46.04). However, there are limits to literalism; " '[i]n the exposition of a statute, the intention of the lawmaker will prevail over the literal sense of the terms; and its reason and intention will prevail over the strict letter' " (*Sanders v Winship,* 57 NY2d 391, 396, citing Kent's Comm [13th ed], p 462; see *MVAIC v Eisenberg,* 18 NY2d 1, 2; 2A Sutherland, Statutory Construction [Sands, 4th ed], §§ 46.05, 46.07). Courts will not blindly construe statutes or the rules or regulations of an administrative agency in a manner which thwarts the obvious legislative intent and reaches unreasonable, absurd and unexpected consequences (see *Matter of Chatlos v McGoldrick,* 302 NY 380, 387-388; *Matter of Friedman-Kien v City of New York,* 92 AD2d 827, 828-829, affd 61 NY2d 923; see, also, *Williams v Williams,* 23 NY2d 592, 598-599; McKinney's Cons Laws of NY, Book 1, Statutes, §§ 92, 143, 145, 148; 2A Sutherland, Statutory Construction [Sands, 4th ed], § 46.06).

In the case at bar, adoption of the "literal language" of subdivision 2-a of former section 167 of the Insurance Law as urged by respondent would thwart the obvious legislative intent

and reach clearly unexpected consequences not contemplated by our lawmakers when the statute was amended in 1979 (L 1979, ch 665). The intent of the Legislature was to make a general upward modification of the sums of insurance coverages for motor vehicle accidents resulting in death. In so doing, it was not additionally intended to permit aggregation of claims for both injury and death to the same person. A reading of the statute prior to the 1979 amendment demonstrates that there existed a $10,000 limit on bodily injury and death claims, and that claims could not be aggregated ("all sums, not exceeding a maximum amount or limit of ten thousand dollars * * * on account of injury to, *or* death of, one person, in any one accident" [emphasis added]). Merely because the Legislature, in increasing the amount of insurance required for accidents resulting in death, used the word "and" instead of "or" cannot, under the circumstances of this case, be read to constitute evidence of an intent to permit aggregation of injury and death claims, which was not permitted by the terms of the statute prior to its amendment.

This view comports with the legislative history as evidenced by the bill jacket to the 1979 statutory amendments to the Insurance Law and the Vehicle and Traffic Law. The memorandum of Senator John R. Dunne, the bill's sponsor, indicates that the purpose and justification of the amendment was:

"[t]o increase the minimum mandatory coverages of bodily injury liability insurance from $10,000 per person/$20,000 *per accident* to $50,000 per person/$100,000 *per accident* in cases of wrongful death only * * *

"[t]he current limitations were promulgated in 1959. It is clear that the amount of insurance protection that was adequate in 1959 cannot be remotely close to adequate in 1979" (emphasis supplied).

Additionally, persuasive of an intent that coverages for personal injury and death not be "stacked" (see discussion in Shayne and Dachs, Insurance and No-Fault Law, NYLJ, July 26, 1983, p 1, col 1), are other bill jacket items including a Senate budget report, Department of Motor Vehicles memorandum and a letter from the Superintendent of Insurance. For example, the budget report noted that the bill would, *inter alia,* "increase the maximum amounts of insurance payable to beneficiaries on account of the death of one or more persons in a motor vehicle accident", the maximum then being $10,000 and the proposed maximum being $50,000. As an argument in support of the bill, the report noted that it "would increase [coverage] to levels which are more

realistic in relation to inflationary changes in the economy". The memorandum considered the argument that the bill should also have raised the personal injury ceiling because in many cases, costs resulting from injury could well exceed the financial liability resulting from death, stating in pertinent part: "This bill would increase the liability limits on insurance payments for deaths resulting from motor vehicle accidents, but would not change the present ceiling on insurance payment[s] for injuries * * * Such limits would remain at $10,000 for injuries to one person". The memorandum of the Department of Motor Vehicles, dated June 26, 1979, reflects a similar understanding, namely, the assumption that "the coverage amounts have been raised only for death", as does a letter, dated July 2, 1979, from the then Superintendent of Insurance to the Governor's counsel. In sum, the legislative history of the 1979 amendments (L 1979, ch 665) is bereft of any indication that the legislators of this State intended to amend prior long-standing, statutory provisions to permit combination claims in the event of bodily injury resulting in death arising out of a motor vehicle accident involving an unidentified motor vehicle.

## II

In examining chapter 665 of the Laws of 1979, it may be readily observed that the words "and" and "or", which are used to connect the provisions respecting insurance coverage for injury and death, are used loosely and interchangeably. While the amendment to subdivision 2-a of former section 167 of the Insurance Law which increased uninsured motorist and unidentified vehicle coverage for accidents resulting in death to $50,000 per person and $100,000 per accident uses the word "and", the same subdivision uses the word "or" in establishing monetary limits for optional uninsured motorist coverage (Insurance Law, former § 167, subd 2-a, presently § 3420, subd [f], par [1]). Further, former section 610 of the Insurance Law, as amended by chapter 665 of the Laws of 1979, used the word "and", while subdivision (a) of former section 619 of the Insurance Law used both "and" (with respect to the coverage limits pᴇr person) and "or" (with regard to coverage limits per accident). The word "and" is also used in section 311 (subd 4, par [a]) of the Vehicle and Traffic Law, and section 370 (subd 1, par [a]) of the Vehicle and Traffic Law, as amended. The word "or" is used as a conjunction in the remaining statutes amended by chapter 665 of the Laws of 1979 (Vehicle and Traffic Law, § 250, subd 4, par a; §§ 333, 335, subd [a]; §§ 341, 345, subd [b], par [3]).

"A common mistake made by the drafters of statutes is the use of the word 'and' when 'or' is intended or vice versa" (McKinney's Cons Laws of NY, Book 1, Statutes, § 365). This is reflective of the fact that the popular use of these words is notoriously loose and inaccurate. Accordingly, when it is apparent that the Legislature has erroneously used the wrong word, the courts may read the statute in question in a manner which correctly expresses the legislative intent (see *People ex rel. Municipal Gas Co. v Public Serv. Comm.,* 224 NY 156, 165; McKinney's Cons Laws of NY, Book 1, Statutes, § 365). Moreover, since the statutes amended by chapter 665 of the Laws of 1979 deal with similar subject matter (motor vehicle insurance coverages limits), they must be construed together *in pari materia* (see *People ex rel. Doscher v Sisson,* 222 NY 387, 393; *Matter of Lumbermens Mut. Cas. Co. [Berkovic],* 74 AD2d 496, 498; see, generally, 2A Sutherland, Statutory Construction [Sands, 4th ed], §§ 51.01-51.08) particularly where, as in the case at bar, the statutes are enacted or amended at the same time (see *City Bank Farmers Trust Co. v Ardlea Inc.,* 267 NY 224; *Town of Islip v Powell,* 78 Misc 2d 1007, 1012; McKinney's Cons Laws of NY, Book 1, Statutes, § 221, subds a, b; 2A Sutherland, Statutory Construction [Sands, 4th ed], § 51.03, p 469).

Applying these principles to the case at bar, it is readily apparent that the legislative purpose and intent of chapter 665 of the Laws of 1979 should transcend the literal meaning of the words "and" and "or". Those words, as evidenced by the statutory amendments effected by chapter 665 of the Laws of 1979 (discussed, *supra*), have clearly been used in a loose and inaccurate manner. Accordingly, the mere use of the word "and" cannot form sufficient basis for a statutory construction at odds with the legislative intent as evidenced, *inter alia,* by the bill jacket, and it must be concluded that subdivision 2-a of former section 167 of the Insurance Law cannot be read as permitting aggregate claims founded upon injury to and the demise of the same individual arising out of a vehicular accident involving an unidentified motorist.

### III

We are in accord with the principles expressed by Justice Levitt in *Allen v Haskins* (120 Misc 2d 1073), a case involving the construction of section 345 (subd [b], par [3]) of the Vehicle and Traffic Law, a provision which establishes the sums of insurance required in every motor vehicle liability policy and which uses the word "or" to connect the provisions for insurance coverage for bodily injury and death. The provision was

amended in 1979, as was subdivision 2-a of former section 167 of the Insurance Law, to counter the effect of inflation. In *Allen,* as in the case at bar, claims for both $10,000 on account of physical injury and $50,000 on account of death (for a total of $60,000) were asserted. Noting that prior to the 1979 amendment the total recovery for all physical consequences of an action was $10,000 and that the amendment did not alter the separate allocation of benefits but rather, compensated, in the case of death, for the inflationary factor (*Allen v Haskins, supra,* pp 1075-1076), the court held that the proper limit of insurance coverage for bodily injury resulting in death was $50,000 (*Allen v Haskins, supra,* p 1077).

The *Allen* court additionally noted that the Superintendent of Insurance had promulgated regulations governing minimum provisions for automobile liability insurance policies (11 NYCRR part 60) providing, in pertinent part that:

"[a]n 'owner's policy of liability insurance' shall contain in substance the following minimum provisions * * *

"(a) Insurance against loss from the liability imposed by law upon the insured for damages * * * exclusive of interest and costs, with respect to each such motor vehicle of $10,000 because of bodily injury, sickness or disease of any one person *who does not die* as a result of any one accident and $50,000 *because of bodily injury, sickness or disease of any one person who dies as the result of any one accident*" (11 NYCRR 60.1 [a]; emphasis added).

In promulgating this regulation, which interprets section 345 (subd [b], par [3]) of the Vehicle and Traffic Law, the provisions of which are comparable to the statute in question, the Superintendent has, in effect, determined that the $10,000 limit applies only to a person who does not die as a result of an accident, and that the $50,000 limit applies only to a person who dies as a result of an accident (see, also, Superintendent of Insurance, Circular Letter No. 28, 1979, illustration 1, quoted in Shayne and Dachs, Insurance and No-Fault Law, NYLJ, July 26, 1983, p 1, col 1). These classifications are separate and distinct and clearly contrary to any assertion that "stacking" of claims founded on personal injury and death is permissible. Generally, as long as a particular regulation is not inconsistent with some specific statutory provision, the Superintendent of Insurance is vested with broad power to "interpret, clarify, and implement the legislative policy" (*Breen v Cunard Lines S.S. Co.,* 33 NY2d 508, 511; *Ostrer v Schenck,* 41 NY2d 782, 785-786; see Insurance Law, former §§ 10, 21). The construction afforded particular

statutes or regulations by the agency responsible for their administration should be upheld if not irrational or unreasonable (*Matter of Bernstein v Toia*, 43 NY2d 437, 448; *Matter of Johnson v Joy*, 48 NY2d 689, 691; *Matter of East Clinton Developers v Town of Clinton*, 88 AD2d 416, 423). Since the courts defer to administrative expertise where interpretation or application of a statute calls for special knowledge (see *Matter of Eastern Milk Producers Coop. Assn. v State of New York Dept. of Agric. & Markets*, 58 NY2d 1097, 1100; *Kurcsics v Merchants Mut. Ins. Co.*, 49 NY2d 451, 459), we follow the interpretation given comparable statutory $10,000 injury and $50,000 death provisions by the Superintendent of Insurance as embodied in 11 NYCRR 60.1 (a). Our holding is further buttressed by the fact that the Legislature amended subdivision 2-a of former section 167 of the Insurance Law subsequent to the 1979 amendment, making no change in the provisions relevant to this appeal (L 1981, ch 435, § 1), despite awareness of the administrative view that the $50,000/$100,000 liability minimum for death is distinct from the statutory $10,000/$20,000 personal injury liability limit (see *Matter of Foscarinis [Corsi]*, 284 App Div 476, 477-478).

Accordingly, we conclude that respondent is limited to a maximum claim of $50,000 on account of the death of the decedent, and cannot make an additional claim of $10,000 on account of the injuries he sustained prior to his demise.

NIEHOFF, J. P., RUBIN and EIBER, JJ., concur.

Order of the Supreme Court, Richmond County, dated June 14, 1983, modified, on the law, by deleting the provision thereof which authorized a claim for $10,000 on account of injury to claimant's decedent in addition to $50,000 on account of the death of decedent, and substituting therefor a provision limiting the maximum amount which may be awarded by the arbitrator to $50,000. As so modified, order affirmed insofar as appealed from, with costs to petitioner.