*701 OPINION OF THE COURT
Carl O. Callender, J.
I. PROCEDURAL POSTURE
The respondent moves for a summary judgment against the petition seeking the following orders: (1) An order declaring that the respondent is a rent-controlled and not a rent-stabilized tenant; (2) A decision that because the respondent is a rent-controlled tenant the fact that the petitioner has charged her rent pursuant to rent-stabilized allowable increases has resulted in the respondent being overcharged; (3) An order determining not only that the respondent has been overcharged by the petitioner, but the overcharge was willful and therefore the respondent is entitled to treble or punitive damages.
The petitioner counters that the petitioner should be awarded a judgment for rent due based on its claim that the respondent is actually a rent-stabilized tenant as a matter of law and therefore the respondent’s motion should be denied.
II. FACTUAL AGREEMENT
The parties agree that the following information is true: (1) The respondent moved into the subject premises in 1969 and has remained there without interruption to the present; (2) At the time the respondent moved into the apartment she was protected by the rent control laws; (3) The building in question was acquired by the City of New York on July 28, 1983; (4) The building was sold by the City of New York to the petitioner in December 1986; (5) The rents charged the respondent from December 1986 to the present were based on the last rent charged by the City just before the building was sold and the lawful increases permitted for rent-stabilized apartments.
III. LEGAL CLAIMS
1. Petitioner’s Contentions
The petitioner argues that when the building was acquired by the City of New York and then sold to the petitioner, the apartment became decontrolled and rent stabilized.
A. Rent Stabilization Law
The petitioner draws our attention to section 26-507 of the Rent Stabilization Law of 1969 (Administrative Code City of NY, tit 26, ch 4 [RSL]). It argues that that provision of the law changes rent-controlled apartments to rent-stabilized dwelling *702 units when the City conveys the building to private ownership. That law, the petitioner states, makes the rent after the change of ownership the same as the last rent charged by the City.
B. The Lawful Rent
Further, the petitioner says that the rent actually charged from the date the petitioner purchased the premises until today is entirely consistent with the rents chargeable to rent-stabilized units.
Therefore, the petitioner seeks a judgment for all rent that remains unpaid that has been claimed by it pursuant to the charges according to the rent stabilization laws and that was requested in the petition.
2. The Respondent’s Position A. Rent Control Status Remains Unchanged
The respondent states that the rent control status of the subject premises remained unchanged and withstood the change of ownership from the City of New York to petitioner.
B. The Petitioner Made No Effort To Seek Increases From The Rent Control Agency
The respondent notes that not one of the increases claimed by the petitioner was approved by the rent control agency. She also observes that the petitioner never requested approval from the rent control agency to raise her rent.
C. The Rent Should Remain At The Same Level It Was When It Was Rent Controlled
The respondent argues that according to rent control procedures and policies the respondent’s rent remains the same as it was when the petitioner bought it from the City. Therefore any increases made by the petitioner is unlawful and constitutes an overcharge claims the respondent.
D. The Petitioner Willfully Overcharged
The respondent declares that because the petitioner refused to utilize the appropriate rent-controlled procedures, it should be found to have willfully overcharged the respondent and the respondent should be awarded treble damages.
IV. LEGAL ANALYSIS
1. Perspective Of The Parties
The focal point of attention for both parties has been section 26-507 of the Rent Stabilization Law. The petitioner claims *703 that the aforementioned provision takes a rent-controlled apartment and makes it a rent-stabilized apartment whenever it becomes acquired by the City and is then sold to a private owner. This court notes that no rent control law has been offered to predicate the petitioner’s contentions. Rather concentration has been generated and stayed on the Rent Stabilization Law and the legislative history thereunder.
The respondent claims that all references to section 26-507 are irrelevant and inappropriate. The contentions of the respondent are as follows: (A) The apartment remains under rent control once private ownership regains control after a City foreclosure; (B) Should the private owner seek rent increases it is restricted to seek them from and only from the agency responsible for rent control by making the necessary procedural applications and filings; (C) Since the petitioner never sought increases of the rent control rent, it was never entitled to any increases and therefore the increases levied upon the respondent were unlawful overcharges.
2. A Look At The Statute
A. Section 26-507 Of The RSL
This special provision states as follows: (1) That in spite of the rent stabilization laws: (a) 1969 RSL, or (b) the Emergency Tenant Protection Act of 1974 (L 1976, ch 576, § 4), its provisions govern; (2) If any multiple dwelling is sold which had been previously acquired by the City, all dwelling units within the multiple dwelling shall be subject to the Rent Stabilization Law at the last rent charged by the City.
B. Its Relationship To The Rent Control Laws
The respondent has called to the court’s attention the fact that this statute fails to make any mention of rent control laws that may exist that contradict this section.
C. Its Legislative History
The petitioner points to the City Council’s Committee reports to disclose the intention of the Legislature when the statute was voted upon by the Council. In recommending the adoption of the section in question, the report of the Committee on Housing and Buildings stated as follows: "The intent of this bill is that these buildings, upon sale by the City, will now be subject to rent stabilization versus rent controlled.” (See, Rep of Comm on Hous and Bldgs, Int No. 594-A, Mar. 27, 1979; Proceedings of Council of City of NY, vol 1-A, Jan. 3, 1979-Apr. 26, 1979, AL 2.16.)
*704 Thus there seems to be no question that the purpose of section 26-507 was to change rent-controlled apartments to rent-stabilized units when the City returns a building to private ownership.
3. The Rent Control Statutes
In view of the fact that section 26-507 does not mention the rent control laws it seems appropriate to consider what those laws indicate should happen to a rent-controlled apartment when a building changes from City to private ownership. In looking at the rent control provisions one must consider whether the circumstances encountered in the instant case have already been contemplated and covered by them. If so, the final question would be which one or ones govern the instant case, the Rent Stabilization Law, the rent control provisions, or both.
A. The New York City Rent And Rehabilitation Law
The City Council enacted the law governing rent-controlled apartments by the creation of the New York City Rent and Rehabilitation Law (hereinafter referred to as the Rent and Rehabilitation Law or the rent control law). This rent control law embraces Administrative Code §§ 26-401 — 26-415. Four sections of the aforementioned law require special mention:
(1) Section 26-403 (e) (2) (f) declares that City-owned buildings are exempt from the rent control laws.
(2) Section 26-405 (a)-(c) makes rental increases permissible in rent-controlled units in City-owned buildings without reference to the rent control laws during the time of City ownership.
(3) In section 26-405 (a) (8) the City Council mandates that upon the sale of a multiple dwelling that had been previously acquired by the City the rent-controlled apartment contained therein was again subject to rent control and the maximum rent was not permitted to be more than the last rent charged by the City and could not be more than that permitted by the rent control laws.
(4) In section 26-412 (a) the City Council makes it unlawful to demand or receive rent in excess of the maximum rent established by the rent control agency regardless of any contract, lease or other obligation entered into before or after this section was enacted.
*705 B. What The Rent Control Laws Contemplate
It is evident that the rent control provisions of the law contemplate the same circumstances as are extant in the instant case. The Rent and Rehabilitation Law provides for the registration, establishment and the adjustment of rent in rent-controlled apartments where City ownership has interloped and has been discontinued.
C. Rent Stabilization And The Rent Control Law
It appears as though both laws provide contradictory approaches to the same factual circumstances. It is not evident that either has been repealed by the other. Rent Stabilization Law § 26-507 never mentions the rent control laws. Rent Control Law §§ 26-401 — 26-415 seem to operate independently of the Rent Stabilization Law. There are some differences that are worthy of note:
(1) Section 26-507: (a) makes reference only to the Rent Stabilization Law; (b) in its title makes it clear that it only applies to "certain multiple dwellings purchased from the city”; (c) appears to apply only to those multiple dwellings which were previously subject to the Rent Stabilization Law of 1969, or the Emergency Tenant Protection Act of 1974.
(2) Sections 26-401 — 26-415 apply only to rent-controlled apartments and has not been repealed or amended to change rent-controlled apartments to rent-stabilized apartments after City ownership.
D. The Rules Of Statutory Construction
The general rule seems to be that the clear and plain meaning of the statute as it is written on its face should govern any interpretation of a particular statute. (See, 2A Sutherland, Statutory Construction, §§ 48-09, 48.12 [4th ed].) The matter of the legislative intention of the City Council when section 26-507 was written then becomes of little import if the plain, clear and simple meaning of the statute indicates that rent-stabilized apartments when the City sells them regains its rent-stabilized status.
Section 26-507 clearly and simply supersedes all different regulations under the Rent Stabilization Law. Therefore, rent control apartment protection under the rent control laws remain in place. (See, Matter of Daniel C., 99 AD2d 35 [2d Dept 1984], stay denied 61 NY2d 1025, affd 63 NY2d 927; Matter of Allstate Ins. Co. v Libow, 106 AD2d 110, affd, 65 NY2d 807.) It *706 should be noted that the aforementioned cases indicate that where the statutory language is clear and unambiguous the enactment shall be interpreted according to the ordinary meaning of its words and resort to extrinsic matter such as its legislative history becomes inappropriate. The reason being that there is no required relationship between what the drafter of the legislation understands the enactment to mean and what members of the City Council meant and/or understood when they voted to put the law in place. (See, People v Graham, 55 NY2d 144 [1982]; 2A Sutherland, Statutory Construction, §§ 48.09, 48.12 [4th ed].)
The reason the history of the law may at times be irrelevant or an inappropriate consideration is because that may have been what the law was originally intended for but it may not be what was in fact enacted. To state it simply, that may have been what the legislators wanted to do, but that was not what they did. In the instant case, section 26-507 may have been written with the intention of making all apartments that are sold by the City automatically converted into rent-stabilized apartments in spite of the fact that they were previously rent-controlled apartments. In fact no rent control laws were changed by the Legislature to reflect that fact. Rather the law itself makes no reference to any laws except the Rent Stabilization Laws. Since the Legislature wrote the rent control laws and had the authority to change them but chose not to do so, the statute should be construed not as it was previously intended, but as it was written.
In view of the fact that the clear meaning of section 26-507 limits itself to contradicting or superseding all contrary regulations or sections under the Rent Stabilization Law, the respondent’s prior rent control protection still governs the status of her apartment and how rent adjustments are made. Therefore, upon the sale of the respondent’s building by the City, her apartment should have reverted to rent control. (See, Oteri v Temporary State Hous. Rent Commn., 9 AD2d 529 [1st Dept], affd 8 NY2d 810 [1960]; 43-45 W. 129th St. HDFC v "Doe”, NYLJ, Mar. 2, 1992, at 31, col 2; Administrative Code § 26-403 [e] [2] [f]; § 26-504; Rent and Eviction Regulations [9 NYCRR] § 2200.2 [f] [6]; Rent Stabilization Code [9 NYCRR] § 2520.11 [b].)
V. THE COURT’S DETERMINATION AND ORDERS
The subject premises are rent controlled and all increases must be awarded by the agency in charge of rent control. Since *707 the petitioner has never applied for any increases from them as a rent-controlled apartment, none have been awarded and it therefore has no entitlement to any rent increases beyond the $116 monthly rent last charged by the City of New York. Accordingly, any increases paid by the petitioner above the $116 monthly rent constitute unlawful overcharges.
The court makes the following findings and orders: (1) While the amount of monthly rent is $116 monthly, a hearing must be held to determine how much overcharges have been paid by the respondent to the petitioner; (2) This court finds that no basis exists for a claim of willfulness and an award of treble damages; (3) A hearing date is set for December 15, 1995 at 9:30 a.m. to determine the amount of overcharges paid by respondent if any, and to deal with the remaining issues.