OPINION OF THE COURT
Edward J. Greenfield, J.
This motion, seeking to bar a psychiatrist formerly employed by the State of New York from giving testimony about the mental status of a patient she had dealt with while in State service on the claim that such testimony is precluded by section 73 of the Public Officers Law (the Ethics in Government Act [L 1987, ch 813]), raises an issue not previously dealt with by any court as to the range and applicability of the law which is intended to avoid conflicts of interest and the imputation of possible self-dealing by former public officials when they move on to the private sector.
Some situations involving former State employees are fairly clear cut. Others, such as that involved here, may be more ambiguous, and require examination to construe the statute under circumstances not previously subject to judicial scrutiny. Until resolved, the question is likely to come up repeatedly in future hearings.
The question arises in the context of a psychiatric patient’s application for a transfer from a secure to a nonsecure facility, which turns on whether or not he is currently suffering from a dangerous mental disorder. “[I]n a secure facility a premium is placed on security, confinement and prevention of escapes. In contrast, in a nonsecure facility, since the defendant no longer suffers from a dangerous mental disorder and since his transfer must, according to the regulations, be consistent with public safety, a premium is placed not on security and confinement, but on therapy and rehabilitation.” (People v Ortega, 127 Misc 2d 717, 728, affd 118 AD2d 523, affd 69 NY2d 763.)
The patient, Dwayne Doxen, was apprehended in 1991 after a bizarre incident in the subway when he attempted to steal another passenger’s bag, and then threatened and menaced other riders with a carpenter’s saw. He threatened to chop one person’s head off. He was arrested by the police, but pursuant to a plea he was found not guilty by reason of mental disease *328 or defect. He was sent to Kirby Psychiatric Center, a secure facility. In July of 1992 he consented to a one-year order of retention, and was transferred to Manhattan Psychiatric Center. Shortly thereafter, he allegedly threatened other patients and staff, and was arrested after hitting another patient over the head with a sock full of batteries. He was arrested, and pleaded guilty to assault in the third degree, and he served six months in jail. Then, having again been found to be dangerously mentally ill, he was recommitted to Kirby. In October of 1993 he consented to a further order of retention and was transferred back to Manhattan State. Based on assessment by the staff, he was granted unescorted privileges. He eloped but returned, and then, in November of 1994, while being taken to court on yet another arrest, he escaped and remained at large until arrested for harassment and violence against his common-law wife.
He was returned to Kirby on March 29, 1995 where he was confined pursuant to CPL 330.20, and has been retained by court order. In October of 1995, a psychiatrist on the patient’s treatment team recommended he be transferred to a nonsecure facility, as he no longer suffered from a dangerous mental disorder. The hospital’s Forensic Committee, a group of three staff psychiatrists, evaluated this patient, and in a report authored by Dr. Angela Hegarty dated January 23, 1996 unanimously disagreed and concluded his mental condition posed a substantial danger.
At the end of 1996 the patient’s treatment team again recommended he be transferred to a nonsecure facility, and this time a new Forensic Committee unanimously agreed that he was no longer suffering from a dangerous mental disorder. The Associate Clinical Director this time approved the recommendation, as did the State Commissioner of Mental Health in Albany. In October of 1997 the patient consented to further retention, but contending he is no longer dangerously mentally ill, he is again applying for transfer to Manhattan State as a nonsecure hospital. The District Attorney’s office of New York County was not prepared to go along with this recommendation, and retained Dr. Hegarty, no longer in State service and now employed as a psychiatrist at Bellevue, to interview the patient and submit a report.
The attorney for Mental Hygiene Legal Services, which is representing the patient, has now made a formal written motion to preclude the testimony and the report of Dr. Hegarty, as barred by Public Officers Law § 73 (8) (a) (ii). That section *329 provides as follows: “No person who has served as a state officer or employee shall after the termination of such service or employment appear, practice, communicate or otherwise render services before any state agency or receive compensation for any such services rendered by such former officer or employee on behalf of any person, firm, corporation or other entity in relation to any case, proceeding, application or transaction with respect to which such person was directly concerned and in which he or she personally participated during the period of his or her service or employment, or which was under his or her active consideration.”
That section has been referred to by the Court of Appeals as the “revolving door” provision, designed to prevent former government employees from unfairly profiting from or otherwise trading upon the contacts, associations and special knowledge that they acquired during their tenure as public servants. (Forti v New York State Ethics Commn., 75 NY2d 596, 605.) Forti and the associated case of Kuttner v Cuomo involved former attorneys who left State service to go into private practice before the enactment of the ban to bar their future participation. The Court of Appeals held that the ban could apply retroactively to prior service so as to preclude subsequent activity before State agencies, and that the bar was not an unconstitutional denial of equal protection or due process. The situation here presented is quite different.
The application of this statute to exclude a doctor formerly employed by the State from thereafter appearing in a court proceeding raises genuine concerns about the existing practice of retaining such doctors by the Attorney-General’s office, the District Attorney, by the court as independent experts, or indeed by Mental Hygiene Legal Services itself in the numerous proceedings as to a patient’s current mental status. Frequently the doctor’s previous service is not on a long-term basis. Is such a doctor forever to be silenced as to any patient he once evaluated?
In construing a statute, attention must be paid not only to its literal language, but to the underlying legislative intent. (Matter of Allstate Ins. Co. v Libow, 106 AD2d 110, affd 65 NY2d 807; McKinney’s Cons Laws of NY, Book 1, Statutes § 92 [a].) Courts will not construe statutes “in a manner which thwarts the obvious legislative intent and reaches unreasonable, absurd and unexpected consequences”. (Matter of Allstate Ins. Co. v Libow, 106 AD2d 110, 114.) The purpose of the statute here is clear. “The ban is designed to prevent former public *330 servants from falling prey to one form of conflict of interest, or to the appearance of a conflict, and from taking unfair advantage of their insider’s knowledge and contacts, including the confidences and secrets they may have gained while working on the matter on behalf of the State.” (Forti v New York State Ethics Commn., supra, at 611.)
Certainly a doctor who, while in State service, acquires knowledge of the mental status of a patient cannot be considered to be using such acquired knowledge for personal gain. Whatever contacts she may have developed with colleagues while employed at the hospital will avail her little when appearing as an expert witness before a court.
If a statute is open to varying interpretations, certainly it should not be construed in a manner which is contrary to common sense or manifest legislative intent. For example, it is doubtful that a former State employee should be barred from testifying in a court case involving possible corruption with respect to a transaction in which he peripherally participated. (Cf., Ethics Commn Advisory Opn 94-19.) Similarly, the question is raised whether a doctor previously in the service of the State should be barred from rendering an expert opinion. It is absurd to contend that such a doctor is exploiting his or her past associations or employing “inside information” for profit. Such an application would really cripple the use of expert opinions. In construing the statute, a court must opt for the reading “which will not cause objectionable results, or cause inconvenience, hardship, injustice, mischief, or absurdity.” (McKinney’s Cons Laws of NY, Book 1, Statutes § 141.)
Obviously, the statute is designed to prevent the use of confidential inside information as to policies or practices. There is no need to bar factual observation, procedural comments, knowledge of methodologies employed or expert opinion. (See, Ethics Commn Advisory Opn 94-18.)
The literal reading of the statute does not compel any different result. The first part of the clause prohibits former employees from profiting by appearing or practicing before a State agency, using his or her contacts and special knowledge that may have been acquired. The prohibition is to appearance before a State agency. The term “State agency” is defined by Public Officers Law § 73 (1) (g) as any “state department, or division, board, commission, or bureau of any state department, any public benefit corporation, public authority or commission at least one of whose members is appointed by the governor”. This proceeding is in the Supreme Court, which is not a State agency, but an arm of the judiciary.
*331 Dr. Hegarty was not “directly concerned” with the case of Dwayne Doxen in the sense of having any personal or financial interest in it, but as a member of the Forensic Psychiatric Committee the case was clearly “under * * * her active consideration”. (Public Officers Law § 73 [8] [a] [ii].) She interviewed the patient, she reviewed his records, she evaluated his condition, and wrote a report, so certainly she participated and gave active consideration to his condition. Nevertheless, the statute does not compel her disqualification in the present proceeding.
It should be further noted that the clause really is divided into two parts, dealing with practice and with compensation. The parts are separated by the disjunctive “or”, rather than the conjunction “and”. Thus, the first part prohibits all former State officers and employees from appearing or practicing before any State agency, while the second part alternatively bars the receipt of compensation in any “case, proceeding, application or transaction”, not limited to State agencies and which would include cases and proceedings before a court in circumstances where the former officer or employee has special knowledge. (Public Officers Law §73 [8] [a] [ii].) Hence, there can be no doubt that Dr. Hegarty’s prior involvement in the case of this patient would bar her, under the statutory language, from receiving compensation for the services she is now rendering to the District Attorney’s office.
The New York State Ethics Commission, in an instructive Advisory Opinion, was of the belief that the statutory proscription “ ‘prohibits a former employee from receiving compensation in relation to any case, application, proceeding or transaction without any limitation as to where such activity occurs— before any State agency or any court of competent jurisdiction’ ”. (Ethics Commn Advisory Opn 92-20, at 7 [emphasis supplied].) Obviously, the concern is the notorious “revolving door” where the former employee may be switching sides and loyalties.
In Ethics Commission’s Advisory Opinion 89-7, it was noted that the statutory interdiction prohibited compensation where the former employee had acquired special prior knowledge. However, in Advisory Opinion 93-15, the Commission concluded that a former State employee could render services in a case in which there had been prior personal participation provided the proceeding was not before a State agency and the employee was not being compensated for such services.
Here we are not dealing with compensated services. Dr. Hegarty will not profit from her appearance here. The District At *332 torney’s office has indicated that Dr. Hegarty is not being compensated for her services in this case, and she has agreed. Accordingly, she is permitted to testify. The attorney for Mental Hygiene Legal Services demurs, contending Dr. Hegarty’s retainer initially contemplated compensation, so her attitude is fixed, and she would be irrevocably prejudiced even if she now waives the fee. The compensation involved was not proffered to persuade her to switch sides. The position she is to take would presumably be consistent with her prior report. Nor, despite the absence of payment, is she, as contended, “receiving a thing of value” by way of enhancement of her reputation. The court concludes she is not a “hired gun” out to exploit her prior knowledge and contacts for personal gain, but will relate her opinion and the facts upon which it is based in an objective and professional fashion.
The motion to preclude the testimony and report of Dr. Hegarty is denied.