OPINION OF THE COURT
Herman Cahn, J.
This is an action wherein (a) the defendant art gallery, Hirschl & Adler Galleries, Inc. and Hirschl & Adler Modern, Inc. (collectively, the Gallery), seeks recovery of moneys allegedly loaned by it to the plaintiff artist, Joseph Zucker, as well as commissions allegedly due from the plaintiff under a written agreement providing for exclusive worldwide representation of plaintiff’s artwork, and (b)' the plaintiff seeks recovery of several works of his art which he originally delivered to the Gallery on a consignment basis which the Gallery now refuses to return based upon the claimed existence of a security interest in the Gallery’s favor therein.
The primary issue which this court must resolve on this motion is whether Arts and Cultural Affairs Law § 12.01 (1) (a) (v) forbids the Gallery’s claimed security interest in the plaintiff artist’s works thereby mandating the return of said artwork to plaintiff. The Gallery contends it is entitled to retain plaintiff’s unsold artistic works presently in its possession as collateral pursuant to an agreement between the parties wherein plaintiff allegedly pledged the works as security for his promise to repay the sums borrowed. The Gallery contends that neither the creation of its alleged security interest in the artwork, nor its retention of said artwork, violates the Arts and Cultural Affairs Law because that law is intended only to prohibit the creation of security interests in favor of an art dealer’s creditors, not the creation of a security interest in favor of an art dealer that has loaned money directly to an artist. As discussed more fully herein, despite the Gallery’s well-reasoned analysis tending to show a possible legislative printing error resulting in the unintentional deletion of certain crucial language from the statute in question, the court declines the invitation to rewrite the law, leaving that task to the legislative body. Accordingly, a plain reading of Arts and Cultural Affairs Law § 12.01 (1) (a) (v), as written, prohibits the security interest asserted by the Gallery herein thereby mandating a return of said property to plaintiff.
*428 Plaintiff moves for partial summary judgment pursuant to CPLR 3212 seeking (a) an order pursuant to CPLR 7101 (recovery of chattel) and/or CPLR 3001 (declaratory judgment) declaring that he has the right to possession of all of his unsold works of art currently in the Gallery’s custody, possession or control, and (b) dismissing the three affirmative defenses interposed in defendants’ amended answer (failure to state a cause of action, Statute of Limitations and laches, and the assertion that the agreement between the parties permits defendants to retain a security interest in plaintiff’s consigned artwork).
The Gallery opposes the motion and cross-moves for partial summary judgment, including a judgment requiring plaintiff to repay the Gallery (a) the outstanding balance of a claimed loan in the sum of $36,321.78 plus interest, and (b) outstanding commissions due to the Gallery in the sum of at least $75,000.
BACKGROUND
On March 15, 1986, the Gallery and plaintiff entered into a written sales agreement (the Sales Agreement), pursuant to which it was agreed that (a) the Gallery would be plaintiff’s exclusive representative "for all the [plaintiff’s] works offered for sale to the public in all mediums internationally”, (b) plaintiff consigned certain of his artistic works to the Gallery for exhibition and sale; and (c) plaintiff agreed to pay the Gallery a 50% commission on the proceeds of any sale of his works during the term of the Sales Agreement. The Sales Agreement provided for an initial term of three years, plus a two-year renewal period. The Sales Agreement, in pertinent part, states:
"1. [The Gallery] shall be the exclusive representative for all the Artist’s [plaintiff’s] works offered for sale to the public in all mediums internationally, and will use its best efforts to exhibit and sell this work, in consultation with the Artist * * *
"3. * * * The Gallery shall receive a sales commission of 50% computed on the agreed-upon retail price for all consigned works sold by it or by the Artist”.
Pursuant to the Sales Agreement, plaintiff delivered various artistic works to the Gallery from time to time for display and sale. The Gallery contends that, notwithstanding the technical expiration of the renewal period of the Sales Agreement in March 1991, the parties continued to do business under its terms until approximately March 1993.
Beginning on January 20, 1987, and from time to time thereafter, the Gallery agreed to advance money to plaintiff, alleg *429 edly in the form of loans. According to the Gallery, the oral agreement between the parties provided that: (a) the Gallery would retain all of plaintiffs unsold works, no matter when delivered to the Gallery, until the sums loaned were repaid in full, and (b) the Gallery would apply plaintiff’s share of the sales proceeds to reduce the balance of any unpaid loans from plaintiff to the Gallery. As shown by the documents annexed to the Gallery’s papers, upon the sale of an item of plaintiff’s work, the Gallery regularly prepared and delivered to him a statement of account which indicated that the Gallery deducted from the sales proceeds its 50% commission and any sums previously advanced to him and paid the remaining sums to plaintiff.
Plaintiff admits that he received monetary advances from the Gallery, and does not seem to dispute that he borrowed a total of approximately $129,000 from the Gallery. Of this sum, $36,321.78 currently remains outstanding. However, plaintiff claims that the advances did not constitute a "loan”, but rather an advance against commissions, in that he never agreed to repay these sums other than through the Gallery’s deduction from the proceeds of sales of his artwork. In this regard, in paragraphs 12 and 13 of his affidavit dated April 1, 1996, plaintiff states: "The Agreement relating to Advances did not provide that I owed defendants the monetary difference between the advances and commissions. The defendants clearly assumed the risk that advances would exceed commissions. I never agreed to repay the defendants the difference between these two sums * * * Similarly, I never granted [the Gallery] a security interest in my artwork as collateral against such advances.”
Some of the documents submitted by the defendant appear to lend credence to this claim, notwithstanding the affidavits submitted by defendant.
In approximately March 1993, plaintiff and the Gallery terminated their relationship. On June 15, 1993, the Gallery demanded repayment of the outstanding loan balance ($36,321.78). The Gallery claims it also made other demands for repayment. Plaintiff failed to repay said amounts or any part thereof. Therefore, the Gallery contends it may continue to retain the works as security for plaintiff’s repayment of said loan amounts.
With respect to the Gallery’s claim for commissions, it is undisputed that on July 21, 1992, plaintiff sold 31 pieces of his artwork to Robert Feldman of Parasol Press, Ltd. for $150,000. *430 The Gallery contends that it is owed a 50% commission (i.e., $75,000) by plaintiff for this sale as well as commissions for any other such sales which may have occurred during the term of the Sales Agreement. Plaintiff claims that the Sales Agreement only required payment of commissions to the Gallery for sales of works of art offered for sale "to the public”. The above-mentioned transaction, according to plaintiff, was a "private” sale for which he owes no commissions. In his reply affidavit, plaintiff stated: "It was always clear to me that the agreement only covered works which I had consigned to [the Gallery] to be exhibited for sale to the public * * * It was and remains clear to me that this agreement did not preclude me from privately selling works that had not been offered to the public, and specifically, did not ban me from selling works to friends of mine who solicited me for them.”
THE PLEADINGS
The complaint purports to set forth two causes of action, thé first for recovery of chattel under CPLR article 71, and the second for a declaratory judgment declaring that the Gallery has no right to hold any of plaintiffs unsold works and directing the Gallery to return all such works to plaintiff.
The amended answer denies the material allegations of the complaint and
(a) sets forth three affirmative defenses:
(1) failure to state a cause of action,
(2) Statute of Limitations and laches, and
(3) that, pursuant to the agreement between the parties, the Gallery holds a valid security interest in the plaintiffs unsold works as security for plaintiffs promise to repay the money lent to him by the Gallery, which works the Gallery has a right to retain all of which is not in violation of Arts and Cultural Affairs Law § 12.01 (1) (a), and
(b) interposes three counterclaims:
(1) that plaintiff owes the Gallery at least $36,321.78 plus interest representing moneys loaned plaintiff,
(2) that plaintiff owes the Gallery at least $75,000 representing commissions due to the Gallery under the terms of the Sales Agreement for sales of certain of plaintiffs artwork made by plaintiff for which plaintiff failed to remit to the Gallery its commission due under the terms of the Sales Agreement, and
(3) that the Gallery expended in excess of $10,000 in its continued performance under the Sales Agreement in reliance upon plaintiffs acceptance of same.
*431 DISCUSSION
I. Plaintiffs Motion for Partial Summary Judgment A. The Arts and Cultural Affairs Law
Plaintiff’s first cause of action pursuant to CPLR article 71 (recovery of chattel) is predicated upon his claim that the Gallery’s retention of his artwork is unlawful under the Arts and Cultural Affairs Law. Arts and Cultural Affairs Law § 12.01 provides, in relevant part:
"Notwithstanding any custom, practice or usage of the trade, any provision of the uniform commercial code or any other law, statute, requirement or rule, or any agreement, note, memorandum or writing to the contrary:
"(a) Whenever an artist or craftsperson * * * delivers or causes to be delivered a work of fine art, craft or a print of his own creation to an art merchant for the purpose of exhibition and/or sale on a commission, fee or other basis of compensation, the delivery to and acceptance thereof by the art merchant establishes a consignor / consignee relationship as between such artist or craftsperson and such art merchant with respect to the said work, and * * *
"(ii) such work is trust property in the hands of the consignee for the benefit of the consignor * * *
"(v) no such trust property * * * shall be subject or subordinate to any claims, liens or security interest of any kind or nature whatsoever. ” (Emphasis added.)
Plaintiff contends he is entitled to summary judgment on this cause of action because: (a) he is an "artist” as defined in section 11.01 of the Arts and Cultural Affairs Law;[1] (b) the Gallery is an "art merchant” as defined in section 11.01 of the statute;[2] (c) the Sales Agreement established a statutorily defined consignment relationship in which no security interest or lien of any kind or description can be exercised pursuant to section 12.01 (1) (a) (v) of the statute; and (d) the Gallery refuses to return plaintiff’s works by asserting a prohibited security interest in such works.
Plaintiff contends that, based on the clear language of the statute, any claimed security interest in his artwork by the Gallery is void. Accordingly, he contends that pursuant to the *432 aforesaid statute, the paintings in the Gallery’s hands are held as "trust property” for his benefit and must be returned to him.
The Gallery, however, through a thoughtful and detailed analysis of the provision of the Arts and Cultural Affairs Law, including its legislative history, maintains that there was a clerical error in the reported text of the statute resulting in the omission of four critical words "of the consignee’s creditors” at the end of the clause in question. According to the Gallery, the statute should provide that "no such trust property or trust funds shall be subject or subordinate to any claims, liens or security interest of any kind or nature whatsoever of the consignee’s creditors.” In this regard, the Gallery argues that the legislative history confirms that (a) the allegedly omitted words are an integral part of the statute, designed to address the very specific problem created by the seizure of innocent artists’ consigned works by creditors of the art dealers, and (b) the Legislature never intended to create special protection for artists who, like the plaintiff, allegedly default on their own debts. Thus, the Gallery insists that a literal application of the statute would lead to the absurd result that an artist’s consigned artworks would be unavailable to secure the artist’s own debt obligations to his dealer, thereby providing an unintended windfall to the artist and enabling unscrupulous artists to take advantage of their dealers.[3]
However, where, as here, the explicit language of the statute is clear and unambiguous, the court must give effect to the plain meaning of the statute (Matter of Devine, 126 AD2d 491, 493 [1st Dept 1987] [" 'where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used’ (citation omitted)”]; Matter of Allstate Ins. Co. v Libow, 106 AD2d 110, 114 [2d Dept 1984], affd 65 NY2d 807 [1985] ["where a statute is clear on its face and its words are possessed of a definite and precise meaning, resort to extrinsic matter, such as legislative *433 history, is inappropriate”]; see also, Matter of Grossman v Herkimer County Indus. Dev. Agency, 60 AD2d 172, 178 [4th Dept 1977]; Zaldin v Concord Hotel, 48 NY2d 107, 113 [1979]). Moreover, it is not for the courts to " 'correct supposed errors, omissions or defects in legislation’ ” (Meltzer v Koenigsberg, 302 NY 523, 525 [1951]).
Nor do these circumstances call for a search of the statute’s legislative history (Matter of Lloyd v Grella, 83 NY2d 537, 545-546 [1994], recons denied 83 NY2d 1001 [1994]; Matter of Auerbach v Board of Educ., 204 AD2d 85, 86 [1st Dept 1994], affd 86 NY2d 198 [1995]; Matter of Scotto v Dinkins, 194 AD2d 415 [1st Dept 1993], affd 85 NY2d 209 [1995] [where the Court noted that when the statutory language is clear and unambiguous, "resort to extrinsic matter, such as the legislative history of the amendment, is unnecessary * * * and the court should therefore not substitute its judgment for that of the Legislature”]). Furthermore, a plain reading of a statute cannot be rejected in favor of a contrary reading, suggested only by the legislative history and not by the text itself (see, People v Cypress Hills Cemetery, 208 AD2d 247, 251 [2d Dept 1995]).
Here, notwithstanding the Gallery’s insightful review of the legislative history as well as the cogent argument advanced by the Gallery’s counsel that the Legislature’s failure to include the words "of the consignee’s creditors” may have been an oversight, there nevertheless remains the possibility that the Legislature actually intended to delete this language. In any event, as the cited authorities hold, it is not for the court to change the statutory language (see, e.g., Matter of Scotto v Dinkins, supra). Thus, the court is constrained to apply the statutory provision as written.[4]
Here, it is not disputed that the Gallery is holding a number of plaintiff’s original works of art which it refuses to return to plaintiff based on its claim that the Gallery holds a security interest in said works. Since the statute expressly precludes any such security interest, plaintiff’s motion for partial summary judgment is granted.
B. Declaratory Judgment
Plaintiff’s second cause of action seeks declaratory judgment. It is well settled that declaratory judgment may be *434 denied where another conventional remedy is available (see, Young & Co. v Fleischman, 85 AD2d 571 [1st Dept 1981]). Here, all the relief which plaintiff seeks is already available to him in the first cause of action pursuant to CPLR article 71 and, therefore, summary judgment dismissing the second cause of action is granted.
C. The Gallery’s Affirmative Defenses
It does not appear that the Gallery has pursued either its first affirmative defense (failure to state a cause of action) or its second affirmative defense (Statute of Limitations / laches). Moreover, it appears that the cause of action remaining in the plaintiff’s complaint does state a cause of action and the action was timely commenced as the three-year Statute of Limitations for recovery of chattel (CPLR 214) begins to run when the owner demands the return of the property and that demand is refused (Hoelzer v City of Stamford, 933 F2d 1131, 1135-1136 [2d Cir 1991]). Here, the action was commenced in 1995, less than three years following such demand and refusal.
With respect to the Gallery’s third affirmative defense pertaining to the Gallery’s claimed security interest, as set forth above, the security interest violates Arts and Cultural Affairs Law § 12.01 (1) (a) (v), and is therefore void.
Accordingly, partial summary judgment dismissing the three affirmative defenses is granted.
II. Defendant’s Cross Motion for Summary Judgment
The Gallery’s cross motion for summary judgment on its cause of action for moneys loaned to plaintiff (in the sum of $36,321.78) and for unpaid commissions allegedly due to the Gallery under the terms of the Sales Agreement (in the sum of at least $75,000) is denied due to the existence of triable issues of fact.
As to the claim for unpaid commissions, although the circumstances do tend to show that, after the technical expiration of the Sales Agreement in 1991, the parties continued to do business under the same terms as set forth therein until approximately March 1993, when the parties terminated their arrangement,[5] there are questions of fact as to whether plaintiff’s privately orchestrated sales of his own artwork, *435 including the sale of 31 pieces of art to Mr. Feldman of Parasol Press, was a transaction within the scope of the Sales Agreement for which the Gallery was entitled to commissions.
With respect to the cause of action for moneys loaned, the plaintiff has raised material issues of fact based on his contention that the sums advanced to him by the Gallery did not constitute a loan, but only advances against commissions. In Sakow v 633 Seafood Rest. (186 AD2d 31 [1st Dept 1992]), the Appellate Division held that summary judgment should be denied where substantial triable issues of fact exist concerning the issue of whether an advance of funds to the defendant constituted an investment in the defendant’s business or a construction loan (see also, Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978]). Here, the terms of the parties’ oral agreement concerning the Gallery’s advances of moneys to plaintiff is inconclusive. Accordingly, summary judgment is not presently warranted (L.N.L. Constr. v M.T.F. Indus., 190 AD2d 714 [2d Dept 1993]). The parties may renew their motions for summary judgment, if so advised, after discovery is completed.
CONCLUSION
Accordingly, plaintiff’s motion for partial summary judgment is granted to the extent that the security interest asserted by the Gallery in plaintiff’s artwork is prohibited by Arts and Cultural Affairs Law § 12.01 (1) (a) (v) and the Gallery shall return to plaintiff all such artwork in its custody, control or possession. Plaintiff’s motion for summary judgment is also granted to the extent that the three affirmative defenses set forth in the Gallery’s amended answer are dismissed. Plaintiff’s motion is denied to the extent that plaintiff’s second cause of action for declaratory judgment is dismissed. The Gallery’s cross motion for summary judgment with respect to its counterclaims is denied based upon the existence of material triable issues of fact.

. An "artist” is defined in Arts and Cultural Affairs Law § 11.01 (1) as a "creator of a work of fine art”.

. The definition of "art merchant” is also found in Arts and Cultural Affairs Law § 11.01 (2), defined as a "person who is in the business of dealing, exclusively or non-exclusively, in works of fine art”.

. Additionally, the Gallery has reviewed the law of other States concluding that of the 22 other States that have statutes designed to protect an artist’s consigned work from creditors’ claims, 21 specifically restrict the scope of that protection to guard against claims of the consignee’s or art dealer’s creditors. With respect to the one State, Oregon, whose statute appears to protect an artist’s works against the artist’s own creditors, it appears that the statute may suffer from a clerical error, similar to that alleged here, i.e., one provision says that the works shall not be subject to the claims of a "creditor or consignee” whereas another says "creditor of the consignee”. (See, Ore Rev Stat § 359.210 [1] [b]; § 359.225 [emphasis added].)

. This is especially so, where, as here, the alleged clerical error occurred 12 years ago and no steps have been taken by the Legislature during this time to rectify this "error”.

. Such circumstances include the fact that the Gallery continued to exhibit plaintiff’s art in May 1991, December 1992 and January 1993. Furthermore, although the complaint alleges that the Sales Agreement expired in 1991, plaintiff’s counsel in paragraph 6 of his affirmation dated *435 February 27,1996 concedes that the terms of the Sales Agreement continued to govern the parties’ relationship even after its formal expiration.