Mesbahi v Blood (2019 NY Slip Op 03716)





Mesbahi v Blood


2019 NY Slip Op 03716


Decided on May 9, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 9, 2019

526792

[*1]EMBAREK MESBAHI, Appellant,
v
PETER E. BLOOD, Respondent.

Calendar Date: March 19, 2019

Before: Lynch, J.P., Clark, Mulvey, Aarons and Rumsey, JJ.


John T. Casey Jr., Troy, for appellant.
Frederick W. Killeen, Schenectady, for respondent.



MEMORANDUM AND ORDER
Lynch, J.P.
Appeal from an order of the Supreme Court (Versaci, J.), entered May 29, 2018 in Schenectady County, which, among other things, granted defendant's cross motion for summary judgment dismissing the complaint.
This dispute arises from an art sale agreement that plaintiff entered into with defendant's father, Robert Blood (hereinafter decedent), in February 2012. Decedent was a sculptor who died testate in December 2016, leaving defendant as the executor and sole residuary beneficiary of his estate. Under the terms of the agreement, plaintiff, referred to as "Agent," was authorized to sell the art work of decedent, referred to as "Artist," at mutually agreed-upon prices, with plaintiff to "receive 40% of the sales price of the art work that he sells on behalf of [decedent]." The agreement specified that "[t]he art work shall remain the property of [decedent] at all times until such time [that] it is transferred to buyer," and "[t]hat either party may terminate this [a]greement upon notice to the other party." Paragraph 8 of the agreement provided that the agreement "shall continue after the death of [decedent]," at which time plaintiff "shall continue to sell the art work in [his] possession and shall be entitled to take possession of all [decedent's] work located at [decedent's] residence." Paragraph 9 of the agreement provided that, "upon the sale of the art work in [plaintiff's] possession, [plaintiff] shall retain 60% of the proceeds of the sale and 40% of the proceeds of the sale shall become the property of [defendant], his heirs and assigns." Lastly, paragraph 10 of the agreement provided that "[plaintiff] shall also have the authority to donate certain number of [decedent's] pieces to a museum."
After decedent's death, defendant, as executor, sent a notice to plaintiff terminating the agreement and demanding the immediate return of any and all of decedent's art work in plaintiff's possession, together with an accounting of all items sold or transferred by plaintiff before or after decedent's death. Plaintiff, in turn, commenced this action seeking a declaratory judgment that the agreement remained intact and irrevocable. Following joinder of issue, both parties moved for summary judgment. Supreme Court denied plaintiff's motion and granted defendant's cross motion, holding that the agreement was no longer in effect and that the art work was the property of decedent's estate. Plaintiff now appeals.
We affirm. "Where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving a practical interpretation to the language employed and reading the contract as a whole" (Ellington v EMI Music, Inc., 24 NY3d 239, 244 [2014]). Where there is ambiguity, a court may look beyond the four corners of the parties' agreement (see id.; Greenfield v Philles Records, 98 NY2d 562, 569 [2002]). There is no dispute that, during decedent's lifetime, the agreement created a consignment relationship between decedent and plaintiff as defined under Arts and Cultural Affairs Law article 12. During this period, the art work unquestionably remained decedent's property, and both parties reserved the right to terminate the agreement upon due notice to the other. This case centers on the impact of decedent's death given that the agreement expressly provided for its continuation under certain adjusted terms recited above. Plaintiff maintains that, by these provisions, decedent effectively created a revocable lifetime trust that became irrevocable upon decedent's passing (see EPTL 7-1.16, 7-1.17 [a]; 13-2.1 [a] [1]). We find this contention unavailing.
Arts and Cultural Affairs Law § 12.01 defines the parameters of the "artist-art merchant relationship." The statute is designed to protect the property rights of an artist by specifying that the art merchant holds the art work and the proceeds of any sales in trust for the benefit of the artist, shielded from any claims by the art merchant's creditors (Arts and Cultural Affairs Law § 12.01 [1] [a] [ii] — [v]). The statutory trust language speaks to the fiduciary obligations of the art merchant to protect the property interests of the artist, but does not otherwise confer any property interest upon the art merchant (see Wesselmann v International Images, 172 Misc 2d 247, 250 [Sup Ct, NY County 1996], affd 259 AD2d 448, 449 [1999], lv dismissed 94 NY2d 796 [1999]; Zucker v Hirschl & Adler Galleries, 170 Misc 2d 426, 432 [Sup Ct, NY County 1996]). To the contrary, the statute specifies that "such trust property and trust funds shall be considered property held in statutory trust, and no such trust property or trust funds shall become the property of the consignee" (Arts and Cultural Affairs Law § 12.01 [a] [v] [emphasis added]). Further, by definition, "'on consignment' means that no title to, estate in, or right to possession of, the work of fine art . . . that is superior to that of the consignor vests in the consignee" (Arts and Cultural Affairs Law § 11.01 [12]). By comparison, a trust creates a fiduciary relationship "under which a trustee holds title to the property but has an enforceable duty to administer it for the benefit of another person" (Margaret Valentine Turano, Practice Commentaries, McKinney's Cons Law of NY, Book 17B, EPTL art 7, at 201-202 [2002]).
We do not agree with plaintiff's assertion that the continuation provisions set forth in paragraphs 8, 9 and 10 of the agreement transformed the document from a consignment agreement into a trust agreement. Paragraph 8 of the agreement specifies that the agreement shall continue upon decedent's death, not just these selected provisions. As a practical matter, the agreement confers no authority upon plaintiff to unilaterally set a sales price. There is also uncertainty as to what plaintiff's authority to donate a "certain" number of art pieces actually entails. For the agreement to continue after decedent's passing, his successor in interest would necessarily have to be consulted on such issues, as nowhere in this agreement does decedent cede his ownership interest to plaintiff (see Matter of Attanasio, 159 AD3d 1180, 1181 [2018]). To this extent, the agreement is ambiguous, but we find it unnecessary to consider extrinsic evidence to resolve this matter (see Greenfield v Philles Records, 98 NY2d at 569-570).
Under general agency principles, an agent's authority is revoked upon the death of the principal (see Matter of Szabo, 10 NY2d 94, 99 [1961]; 2A NY Jur 2d, Agency § 47). The continuation provisions of the agreement certainly reflect the parties' intent to continue the consignment on an adjusted basis, but do not otherwise change the respective rights and obligations of the parties. In our view, Supreme Court correctly determined that decedent's estate succeeded to decedent's interests under the agreement, and that the art work became part of the estate. Correspondingly, defendant was authorized to terminate the agreement and take possession of the property.
Clark, Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the order is affirmed, with costs.