[622 NYS2d 300]

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v CYPRESS HILLS CEMETERY et al., Respondents.

Second Department, February 6, 1995

## APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* New York City *(Pamela A. Mann, Sean Delany* and *Robert R. Molic* of counsel), for appellant.

*Morrison & DeRoos,* New York City *(Edward A. Morrison* of counsel), for respondent.

## OPINION OF THE COURT

SANTUCCI, J.

This is a case of statutory construction. The question presented is whether Not-For-Profit Corporation Law § 1510 (m) (hereinafter N-PCL), which provides that no cemetery "shall use construction and demolition debris * * * for the purpose of burying human remains", is violated when a cemetery permits burials on a site which contains such material but only on condition that the site be first covered by 10 to 12 feet of topsoil. We conclude that this question should be answered in the affirmative.

Cypress Hills Cemetery (hereinafter Cypress Hills) was incorporated in or about 1848 as a nonprofit public cemetery corporation. It presently comprises in excess of 200 acres of land on the Brooklyn-Queens border. As a public cemetery corporation, Cypress Hills is subject to the provisions of N-PCL article 15.

In 1985, Cypress Hills embarked on a project to create additional grave plots within its borders using construction and demolition debris. The project was commenced with a contractor working without a written contract. Rather than receive monetary compensation, the contractor was permitted by Cypress Hills to dispose of construction and demolition debris on the grounds of the cemetery. In actuality, the contractor derived his revenue from fill suppliers, who were major road contractors for the City of New York, by finding a place for them to dispose of a byproduct of their work, to wit, landfill composed of construction and demolition debris. When the project was completed, it resulted in the construction of a 40-foot-high mound to be used for burials, that is now known as Terrace Meadow.

In 1989 Cypress Hills contracted with the same contractor to create several thousand additional new graves by excavating unused roadways within the cemetery and then filling in those areas with construction and demolition debris.

Following the public dedication of these grave sites and the opening by the cemetery of sales to the public, environmental testing took place at the direction of Cypress Hills' officers. The tests showed that the grave sites did not contain any hazardous or toxic wastes and did not pose any significant public health or environmental hazard.

Effective June 28, 1993, N-PCL 1510 was amended by adding a new subdivision (m), which provides in its entirety as follows: "No cemetery corporation or religious corporation having charge and control of a cemetery which heretofore has been or which hereafter may be used for burials, shall use construction and demolition debris, as that term is defined in 6 NYCRR 360-1.2, for the purpose of burying human remains" (L 1993, ch 169, § 2).

Construction and demolition debris is defined by regulations promulgated by the New York State Department of Environmental Conservation (hereinafter the DEC) as: "uncontaminated solid waste resulting from the construction, remodeling, repair and demolition of utilities, structures and roads; and uncontaminated solid waste resulting from land clearing. Such waste includes, but is not limited to bricks, concrete and other masonry materials, soil, rock, wood (including painted, treated and coated wood and wood products), land clearing debris, wall coverings, plaster, drywall, plumbing fixtures, nonasbestos insulation, roofing shingles and other roof coverings, asphaltic pavement, glass, plastics that are not sealed in a manner that conceals other wastes, empty buckets 10 gallons or less in size and having no more than one inch of residue remaining on the bottom, electrical wiring and components containing no hazardous liquids, and pipe and metals that are incidental to any of the above" (6 NYCRR 360-1.2 [b] [38]).

The legislative sponsors of N-PCL 1510 (m) explained that its purpose was to ensure purchasers of burial plots "their sacred burial by prohibiting the usage of construction and demolition debris for the burial of human remains", and they pointedly decried the use of such material for burials at Cypress Hills (Introducer's Mem in Support, Bill Jacket, L 1993, ch 169).

On or about October 20, 1993, the Attorney-General com-

menced this action against Cypress Hills and its directors, *inter alia,* for a preliminary and permanent injunction prohibiting them from conducting any unauthorized activities, including continuing to perform burials in violation of N-PCL 1510 (m).

The defendants responded to the Attorney-General's complaint with a verified answer dated November 10, 1993, in which they denied the applicability of N-PCL 1510 (m) to the activities engaged in by Cypress Hills.

By order to show cause dated November 9, 1993, the Attorney-General moved in the Supreme Court, *inter alia,* for a preliminary injunction prohibiting all burials in graves at Cypress Hills that were to be dug in fill consisting of any construction and demolition debris, and from continuing to sell such graves either directly or through selling agents. In an affidavit in opposition dated November 22, 1993, and supporting materials, the defendant Gerald B. Egan, the President and a director of Cypress Hills, claimed that there was no violation of N-PCL 1510 (m) because the construction and demolition debris at the cemetery had been covered with "ten to twelve feet of topsoil".

In a memorandum decision dated November 29, 1993, the Supreme Court explained its conditional grant of the Attorney-General's motion for a preliminary injunction as follows: "[I]nsofar as the State seeks * * * [to] prohibi[t] defendants from performing burials on the Terrace Meadows mound or any other sites consisting of construction and demolition debris * * * [they are enjoined from doing so] *unless defendants demonstrate that ten to twelve feet of topsoil covers such construction debris* (and a greater amount where bodies are to be buried 'three-deep'), for all burials to be conducted henceforward" (emphasis supplied).

The Attorney-General appeals from that portion of an order dated January 4, 1994, entered upon the foregoing memorandum decision, as excepted graves that were covered with topsoil from the application of N-PCL 1510 (m).

Shortly after the Supreme Court's determination of November 29, 1993, the State discovered that little or no topsoil had actually been placed over the debris-landfill used to create the new gravesites. Nevertheless, in a letter to the Supreme Court dated December 28, 1993, the cemetery asserted that there was no violation of the Supreme Court's directive or of the statute because, as burials were required to be performed in

the future, the defendants planned to remove the construction and demolition debris from each affected grave, place topsoil at the bottom of the grave, and, after the casket was placed in the grave, fill it in with indigenous topsoil.

The Attorney-General subsequently moved by order to show cause dated January 14, 1994, for "further preliminary injunctive relief", contending that the defendants' "plan" violated the plain meaning of N-PCL 1510 (m), as well as the January 4, 1994 order of the Supreme Court requiring a uniform covering of topsoil. By order dated February 1, 1994, the Supreme Court denied the motion for further preliminary injunctive relief without explanation, and the Attorney-General also appeals from that order.

In the interpretation of statutes, the purpose of the act and the objectives to be accomplished must be considered. It is the legislative intent that is the great and controlling principle, and the primary consideration of the courts in the construction of statutory provisions is to ascertain and give effect to that intent *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a]; *Niesig v Team I,* 76 NY2d 363, 369; *Ferres v City of New Rochelle,* 68 NY2d 446, 451; *Matter of Allstate Ins. Co. v Libow,* 106 AD2d 110, 114, *affd* 65 NY2d 807).

In effecting that objective, the courts are first bound to ascertain the legislative intent from a literal reading of the words of the statute (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [b]; § 94; *see, Patrolmen's Benevolent Assn. v City of New York,* 41 NY2d 205, 208; *Matter of Allstate Ins. Co. v Libow, supra,* at 114). Where the legislative intent is clear and unambiguous from the language of the statute, the words used should be construed so as to give effect to their plain meaning *(see, e.g., Matter of State of New York v Ford Motor Co.,* 74 NY2d 495, 500; *Finger Lakes Racing Assn. v New York State Racing & Wagering Bd.,* 45 NY2d 471, 479-480), and resort to extrinsic evidence, such as the legislative history of the statute, is inappropriate *(see,* McKinney's Cons Laws of NY, Book 1, Statutes § 120; *Giblin v Nassau County Med. Ctr.,* 61 NY2d 67, 74; *Rubin & Sons v Clay Equip. Corp.,* 184 AD2d 168, 170). Only where the legislative intent of a statute cannot be ascertained from a literal reading may the courts go outside the statute in an endeavor to find its true meaning (McKinney's Cons Laws of NY, Book 1, Statutes § 92 [b]). Such is the situation in the case at bar.

The pertinent language of the amended statute providing

that "[n]o cemetery corporation * * * shall use construction and demolition debris * * * for the purpose of burying human remains" (N-PCL 1510 [m]) does not distinguish between (1) the use of such debris in the actual physical act of covering, e.g., being thrown onto, and/or immediately surrounding the coffin in the grave site, and (2) the mere, even passive, existence of such debris anywhere in the grave site, e.g., 10 to 12 feet below the coffin. Because the statute does not make this distinction, certain questions arise. For instance, if the construction and demolition debris exists only 10 to 12 feet below the coffin, may it still be said that it is used in the act or procedure of burying the human remains? Is the whole grave site contaminated by the existence of any construction and demolition debris anywhere within it? The answers to such questions are not readily garnered by a literal reading of the amended statute. Thus, there is a measure of ambiguity inherent in the statute which we are now called upon to interpret.

As noted, where there is ambiguity about the meaning and intent of a statute, it is proper to resort to its legislative history for clarification. In doing so, it becomes clear that the purpose of the statute is to prohibit the burial of human remains in any construction and demolition debris, and that the "topsoil exception" fashioned by Supreme Court defeats the statute's intent of protecting the sanctity of human burials. For example, the New York State Senate Introducer's Memorandum in Support of Senate Bill 5090 and Assembly Bill 5633 (hereinafter S.5090/A.5633) states specifically as follows: "This bill would prevent the further exploitation of consumers of burial plots and insure their sacred burial by prohibiting the usage of construction and demolition debris for the burial of human remains" (Bill Jacket, L 1993, ch 169).

Moreover, in Assembly Sponsor Catherine Nolan's June 21, 1993 letter to Governor Cuomo concerning S.5090/A.5633 she states, *inter alia,* as follows: "[C]onstruction and demolition debris is not suitable material to bury human remains. This bill to prohibit the burial of human remains in construction and demolition debris is unfortunately necessary to prevent further the desecration of the dead. This bill would prevent the further exploitation of consumers of burial plots and insure their sacred burial". (Bill Jacket, L 1993, ch 169.)

The June 25, 1993, Memorandum from Executive Deputy Secretary of State James N. Baldwin to Honorable Elizabeth D. Moore, Counsel to the Governor, recommending approval of

S.5090 (Bill Jacket, L 1993, ch 169), states in relevant part as follows:

"The bill is a response to the practice of certain cemeteries of using construction and demolition debris as fill in lands given over to the interment of deceased persons. Such debris is not necessarily screened for the presence of toxic materials. Clearly, the loved ones of a deceased person have an interest in the prevention of the use of such materials *on or about* the gravesite.

"This bill * * * *flatly prohibits* the use of construction and demolition debris in cemetery land associated with burials" (emphasis supplied).

The above examples from the legislative history of the amendment, and the legislative history taken as a whole, lead to the conclusion that the legislative intent of N-PCL 1510 (m) is to ban the use and/or existence of construction and demolition debris anywhere and everywhere in the grave site, whether on, in, immediately surrounding, or under the coffin, etc. That is so because the very presence of construction and demolition debris in the burial mound, regardless of its exact location, contaminates the whole site and desecrates the dead, thus defeating the statute's principal purpose.

Furthermore, the topsoil exception to the statute is merely an "artificial construction" conceived by Supreme Court. The court may have created such an exception to make more land available to inner city cemeteries such as Cypress Hills and to help them in alleviating limited space and increased financial problems. However, by creating the exception, the court usurped the power of the Legislature which clearly chose not to include such an exception in the amended statute. Thus, where, as here, the law describes a particular act, thing or person to which it shall apply, the inference must be drawn that "what is omitted or not included was intended to be omitted or excluded" (McKinney's Cons Laws of NY, Book 1, Statutes § 240; *see, Matter of Alonzo M. v New York City Dept. of Probation,* 72 NY2d 662, 665; *Patrolman's Benevolent Assn. of New York v City of New York, supra,* at 208-209).

Finally, it should be noted that any environmental problems associated with the burial mound, e.g., subsurface fires, odors, and the venting of gases, are only secondarily alluded to by the sponsors of the bill. These potential dangers were not the main impetus for the bill. Consequently, the fact that certain tests performed at the landfill by environmental agencies

revealed that no hazardous or toxic wastes were contained therein in excess of regulatory standards, and thus that no significant public health or environmental hazards presently existed, is not determinative of the main issue. Rather, since the statute was amended primarily to prevent the desecration of the dead and to insure their sacred burial, the court erred in creating an exception which defeated the legislative intent.

BRACKEN, J. P., LAWRENCE and GOLDSTEIN, JJ., concur.

Ordered that the order dated January 4, 1994 is reversed insofar as appealed from, on the law, and the words "unless a sufficient amount of topsoil, in no event less than ten to twelve feet of topsoil and a greater amount of topsoil in any grave site that has been or will be sold to accommodate three burials in a single grave plot, uniformly covers the construction and demolition debris in Terrace Meadow and any other area where grave sites were constructed using construction and demolition debris" are deleted; and it is further,

Ordered that the appeal from the order dated February 1, 1994 is dismissed as academic, in light of our determination of the appeal from the order dated January 4, 1994; and it is further,

Ordered that the plaintiff is awarded one bill of costs.