[764 NYS2d 135]

PERRY FRANKEL, Appellant, v KARYN FRANKEL, Defendant.
SCHLISSEL, OSTROW, KARABATOS, POEPPLEIN & TAUB, PLLC,
Nonparty Respondent.

Second Department, September 8, 2003

66

### APPEARANCES OF COUNSEL

*Alexander Potruch, P.C.,* Mineola *(Michael C. Daab* of counsel), for appellant.

*Schlissel, Ostrow, Karabatos, Poepplein & Taub, PLLC,* Mineola *(Stephen W. Schlissel* and *Michael J. Ostrow* of counsel; *Thelma L. Weil* on the brief), nonparty-respondent pro se.

### OPINION OF THE COURT

H. Miller, J.

In this case we are asked to decide whether former counsel for a spouse in a matrimonial action may apply in their own name within that action, against the adversary spouse, for fees for legal services previously rendered.

The facts, as relevant to this appeal, are as follows. Among other things, former counsel represented the wife through over 30 days of the child custody phase of the parties' trial. On March 12, 2001, the trial court ordered the husband to pay the wife's counsel $25,000 in pendente lite attorney's fees. Shortly thereafter, the wife discharged her attorneys; the discharge was reflected on the record on March 30, 2001. On that same date, and after the discharge, an attorney from the law firm indicated on the record that the firm was asserting a lien on the wife's file, and intended to apply for its accrued legal fees. He raised the possibility that he might be able to resolve the fee issue with the husband. The husband's counsel did not object at that time. Thereafter, within the space of one month, the wife hired two successive attorneys to represent her before the action settled. On April 27, 2001, the parties entered into a stipulation of settlement, which, in pertinent part, provided that each party would be responsible for his or her own counsel fees "unless otherwise ordered" by the trial court. Approximately one month later, the wife's former counsel moved in this action against the husband to recover over $94,000 in fees, for services rendered to the wife. The Supreme Court granted the motion to the extent of holding that the wife's former counsel could maintain the application for an attorney's fee against the husband, and referred the matter to a referee to hear and report on the amount of the fee payable by the husband. The husband appeals.

We reverse. Neither the statute nor case law grants a discharged attorney the right to apply in his or her own name for retrospective fees against the adversary spouse, either within or without the matrimonial action. The relevant statutory language is as follows:

"In any action * * * brought * * * for a divorce, * * * the court may direct either spouse * * * to pay such sum or sums of money *directly to the attorney of the other spouse* to enable that spouse to carry on or defend the action * * * as, in the court's discretion, justice requires, having regard to the circumstances of the case and of the respective parties. * * * *Any applications for counsel fees and expenses may be maintained by the attorney for either spouse in his own name in the same proceeding*" (Domestic Relations Law § 237 [a] [emphasis added]).

We are bound in the first instance to ascertain legislative intent from a literal reading of the words of the statute (*see Patrolmen's Benevolent Assn. v City of New York,* 41 NY2d 205 [1976]; *People v Cypress Hills Cemetery,* 208 AD2d 247 [1995]; McKinney's Cons Laws of NY, Book 1, Statutes § 92 [b]; § 94). Where the legislative intent is clear and unambiguous from the language of the statute, the words used should be construed so as to give effect to their plain meaning (*see Matter of State of New York v Ford Motor Co.,* 74 NY2d 495 [1989]; *Patrolmen's Benevolent Assn. v City of New York, supra; People v Cypress Hills Cemetery, supra),* and resort to extrinsic evidence as an aid to construction, such as a statute's legislative history, is inappropriate (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 76). We are aware of the sponsor's memorandum our dissenting colleagues cite. However, "[o]nly where the legislative intent of a statute cannot be ascertained from a literal reading may the courts go outside the statute in an endeavor to find its true meaning" (*People v Cypress Hills Cemetery, supra* at 251).

Notably, the statute with which we are confronted here makes no mention of "discharged" or "former" counsel. Instead, the Legislature authorized "the attorney for either spouse" to seek his or her fees in the matrimonial action. We conclude that the "attorney for either spouse" means the current attorney of record for that party.

Absent a clearer expression in the statute itself, we should not pave the way for what will be the certain result of the construction the discharged attorneys seek here. It will open the floodgates to countless such applications by discharged attorneys, submitted within matrimonial actions with which they no longer have any connection. The time, energy, and additional attorney's fees devoted to those actions ought to be

spent on resolution of the spouses' substantive disputes. The potential for distraction of courts, parties, and current counsel from the matrimonial issues is magnified by the not uncommon circumstance in such litigation that clients engage a number of attorneys before their cases are resolved. In this case, for example, the wife had three attorneys before the matter settled.

Former counsel's construction also would diminish the available funds of the monied spouse for attorney's fee applications by the new attorney representing the nonmonied spouse. That may not apply to this case since the wife settled the action shortly after counsel's discharge.

The cases the discharged attorneys cite do not persuade us otherwise.

For example, in *Sadofsky v Sadofsky* (78 AD2d 520 [1980]), upon which the Supreme Court relied, the parties reconciled on the fourth day of their matrimonial trial, and placed a settlement stipulation on the record. Immediately thereafter, the wife's attorney applied against the husband to recover his fee; the Supreme Court directed the attorney to submit an affidavit of services rendered, which was done. Thereafter, the parties both discharged their attorneys and retained a new one to oppose the fee application. Among other things, the parties argued through their new attorney that a plenary action was required to recover the fees. This Court rejected that contention.

*Sadofsky* is distinguishable. There, the wife's counsel had not yet been discharged at the time he made his fee application, and he fell squarely within the reach of Domestic Relations Law § 237 (a), which authorizes such applications to be made by counsel for a party.

On the other hand, *Monteleon v Monteleon* (163 AD2d 372 [1990]) supports a reversal. In that case, the wife discharged her attorney prior to entering into a stipulation settling the matrimonial action. Thereafter, that attorney moved to set aside the stipulation and for an immediate hearing regarding the fees owed to him in quantum meruit. This Court affirmed the Supreme Court's order denying the former attorney's motion. There, the attorney sought his fees from his own client, and we held that he was "relegated to commencing a plenary action" to obtain his fees (*Monteleon v Monteleon, supra* at 373 [citations and internal quotation marks omitted]). If, according to *Monteleon,* the discharged attorney must resort to a plenary action with respect to his or her former client, then we

see no reason why he or she should be permitted to enter the matrimonial action to pursue a fee application against the adversary spouse.

Nor do the particular facts of this case, upon which the Supreme Court relied, permit the wife's former counsel to seek their fees against the husband herein. The open-court reservation is of no avail, because by that time, the wife's attorneys had already been discharged, and it was by then too late for them to reserve anything—as distinguished from the situation in *Sadofsky (supra)*. As for the language of the stipulation, we conclude that it is ambiguous. It may refer to the prestipulation $25,000 pendente lite fee award to the wife, which had not yet been paid as of the date of the stipulation. It may also refer to fees the wife may incur for her present or future counsel for postjudgment enforcement. It certainly does not clearly grant the wife's former counsel the right to pursue the husband for over $94,000 in legal fees. In sum, neither the open-court reservation nor the stipulation permits former counsel for the wife to pursue the adversary husband for fees, within this matrimonial action.

It is important to note that the wife's former counsel is not without a remedy. For example, the wife, or one of her successor attorneys on her behalf, could have submitted a fee application, within this action, seeking the very fees that now are at issue. That may still be an option in this case. Nothing in Domestic Relations Law § 237 (a) stands in the way of such an application, since a nonmonied spouse's liability to prior counsel for his or her fees may constitute a serious impediment to that spouse's financial ability to carry on or defend the action, or to enter into a feasible settlement.

Consideration of the purpose of Domestic Relations Law § 237 (a) buttresses our conclusion that former counsel has no standing to pursue the adversary spouse within the matrimonial action. As the Court of Appeals has noted, the statute "is designed to redress the economic disparity between the monied spouse and the non-monied spouse" (*O'Shea v O'Shea,* 93 NY2d 187, 190 [1999]). One party to a matrimonial action should not have the advantage simply because he or she has greater financial resources; thus, the Legislature gave trial courts discretion "to make the more affluent spouse pay for [the] legal expenses of the needier one" (*O'Shea v O'Shea,* 93 NY2d at 190). In sum, Domestic Relations Law § 237 (a) is designed to fund the matrimonial action by providing for fee payments to the attorney for the adversary, nonmonied, spouse to allow

that spouse to "carry on or defend" the suit. Its aim is to level the financial playing field between the parties. It is the non-monied client whose interests the statute protects, as it is that person who runs the risk of being financially worn out by his or her adversary's greater resources. While the discharged attorney certainly has an interest in getting paid, nothing in the language of Domestic Relations Law § 237 (a) addresses that particular interest. Once discharged, former counsel cedes the statutory standing of Domestic Relations Law § 237 (a) to pursue the adversary spouse to successor counsel, who may then invoke the statute, as necessary, to allow his or her current client to "carry on or defend" the action.

Accordingly, the order appealed from is reversed, on the law, with costs, and the motion is denied.

ALTMAN, J. (dissenting). Under the particular circumstances of this case, the Supreme Court properly concluded that the wife's former attorneys could seek payment of their fees from the husband. An attorney from the law firm, who represented the wife essentially throughout the entire case, reserved the firm's right to make a fee application on the record at a court appearance where its very recent discharge was confirmed. The husband did not object. The court encouraged the former attorneys and the husband's attorney to resolve the fee issue, and the husband's attorney indicated that they would attempt to do so in the course of settlement negotiations. Less than a month later, the parties entered into a stipulation of settlement in which they acknowledged that the wife had been represented by former counsel and agreed that each would be responsible for his or her counsel fees "unless otherwise ordered by the Court." The stipulation, therefore, did not preclude an application for fees and, in fact, appears to contemplate such an application, although the husband contends otherwise.

While Domestic Relations Law § 237 (a) does not use the words "discharged" or "former" attorney, neither does the statute specifically limit its application to a party's current attorney of record. The courts have consistently eschewed a literal interpretation of the statute and have instead adopted a flexible approach in construing its terms, enabling matrimonial courts to exercise their broad discretion to achieve the purpose of the statute which is "to redress the economic disparity between the monied spouse and the non-monied spouse" (*O'Shea v O'Shea*, 93 NY2d 187, 190 [1999]; *see DeCabrera v Cabrera-Rosete,* 70 NY2d 879 [1987]). For example, in *DeCabrera v*

*Cabrera-Rosete,* the Court of Appeals noted that "[i]ndigency is not a prerequisite to an award of counsel fees" (*DeCabrera v Cabrera-Rosete, supra* at 881), even though, by its terms, the statute would seem to apply only in those cases where a spouse would be unable to "carry on" or "defend" the action without an award of an attorney's fee.

This flexible approach is similarly reflected in *O'Shea v O'Shea (supra)*, where the Court of Appeals concluded that a court has discretion pursuant to Domestic Relations Law § 237 (a) to direct a spouse to pay counsel fees for work performed by opposing counsel *before* commencement of the action, and for work performed in connection with a hearing to determine the amount of the fees to be awarded. Rejecting a mechanical application of the statute, the Court concluded that such fees may be awarded in appropriate circumstances to further the objectives of the statute (*O'Shea v O'Shea, supra* at 193).

Consistent with this flexible approach, this Court in *Sadofsky v Sadofsky* (78 AD2d 520 [1980]) upheld the trial court's authority to entertain an application for counsel fees where the application was made immediately after the parties had reconciled and placed a stipulation of settlement on the record withdrawing the matrimonial action. Although Domestic Relations Law § 237 (a) provided for an award of counsel fees " 'to enable [a] spouse to carry on or defend the action,' " this Court concluded that the trial court properly entertained the application despite the fact that the action had been terminated (*Sadofsky v Sadofsky, supra* at 521, quoting Domestic Relations Law § 237 [a]; *see Katzman v Katzman,* 284 AD2d 160 [2001] [trial court properly exercised discretion in awarding attorneys' fees to wife for legal services rendered in prior divorce action dismissed because of wife's lack of readiness to proceed to trial]).

The propriety of an award of counsel fees in this case is supported not only by the judiciary's flexible approach in interpreting Domestic Relations Law § 237 (a), but also by the legislative history of the amendment to the statute permitting an attorney to make a fee application in the attorney's own name which indicates that applications by former counsel were specifically contemplated. In his memorandum, the sponsor of the amendment stated:

"This bill provides that applications for counsel fees and expenses may be maintained by an attorney in the same matrimonial action wherein he

has rendered services and has been subsequently discharged by his client. The purpose is to protect attorneys when they are discharged without cause from having their right to counsel fees relegated to a civil court action. Hereunder the claim for counsel fees may be kept alive in the matrimonial action. The attorney is given the right to bring such action in his own name" (Sponsor's Mem in Support, L 1978, ch 444, 1978 NY Legis Ann, at 262).

Requiring the husband to pay counsel fees to the wife's former attorneys under the circumstances of this case will not open the floodgates to countless applications as the majority predicts since the determination to entertain such an application will depend on the facts and circumstances of each case. Further, the majority suggests that a matrimonial litigant could, after having discharged an attorney, make an application in his or her own name for an award of fees in favor of such discharged attorney, and that, in light of this circumstance, former counsel "is not without a remedy" (majority op at 69). If, as the majority suggests, the interests of a discharged matrimonial lawyer seeking compensation may be effectively protected by the former client, then the "flood" of applications brought in the name of discharged attorneys should be no more burdensome to the court system than the "flood" of such applications brought in the name of the former clients. In addition, granting relief in this case does not implicate the other concerns expressed by the majority. Consequently, I would affirm the order appealed from.

FLORIO and FEUERSTEIN, JJ., concur with H. MILLER, J.; ALTMAN, J., and PRUDENTI, P.J., dissent and vote to grant leave to appeal and to affirm the order in a separate opinion by ALTMAN, J.

Ordered that on the Court's own motion, the plaintiff's notice of appeal is treated as an application for leave to appeal, and leave to appeal is granted (see CPLR 5701 [c]); and it is further,

Ordered that the order is reversed, on the law, with costs, and the motion is denied.