LKF v MTF (2024 NY Slip Op 24312)

[*1]

LKF v MTF

2024 NY Slip Op 24312

Decided on December 9, 2024

Supreme Court, Nassau County

Dane, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on December 9, 2024
Supreme Court, Nassau County

LKF, Plaintiff,

against
MTF, Defendant.

Index No. xxxxxx/2021

Plaintiff's Counsel: Mulhern & Klein
Defendant's Counsel: Gassman Baiamonte Gruner, P.C.

Edmund M. Dane, J.

The following papers have been read on this motion:
Plaintiff's Order to Show Cause dated May 3, 2024 x
Defendant's Opposition dated August 14, 2024 x
Plaintiff's Reply dated August 27, 2024 x
 INTRODUCTION
The instant application involves a question of statutory interpretation and a novel issue: how to classify a 529 account under the Automatic Orders and, consequently, whether or not a party's post-commencement withdrawal of money from a 529 account to pay their own counsel fees violates the provisions of DRL § 236(B)(2)(b), more commonly referred to as the "Automatic Orders". For the reasons more fully stated herein, the Court: (a) classifies a 529 account as a tax-deferred account under DRL § 236(B)(2)(b)(2); (b) finds that civil contempt is an appropriate remedy for a party's post-commencement withdrawal from a 529 account, and (c) finds that a post-commencement withdrawal from a 529 account - without a court order or written agreement - is violative of the Automatic Orders. However, given the dearth of authority on this issue, the Court declines, at this time, to invoke the drastic remedy of contempt of court, but instead directs the restoration of the funds withdrawn.

 PRELIMINARY STATEMENT
The Plaintiff moves by Order to Show Cause dated May 3, 2024 (Motion Sequence No.: 006) seeking an Order: (1) Holding defendant in contempt for violating the automatic orders; (2) Restraining defendant from making any further withdrawals of the 529 college accounts; (3) Directing defendant to return the monies he withdrew from the 529 college accounts; (4) Granting plaintiff an award of counsel fees if it is determined that defendant has violated the [*2]automatic orders; and (5) For such other and further relief as seems just and proper.

 BACKGROUND
This action for divorce and ancillary relief was commenced by the filing of a Summons with Notice with the Nassau County's Clerk's Office on February 8, 2021. The Summons with Notice contained the statutorily mandated Automatic Orders pursuant to DRL § 236(B)(2)(b). Some of the procedural background of this case is set forth in this Court's Decision and Order dated February 7, 2023, L.F. v. M.F., 78 Misc 3d 810 (Supreme Court Nassau County 2023) (hereinafter referred to as the "February 2023 Order"). After a five (5) day plenary hearing stemming from some of the issues in the February 2023 Order, this Court thereupon issued a Decision and Order After Hearing on Motion(s) on April 4, 2024, L.K.F. v. M.T.F., 82 Misc 3d 1223(A) (Supreme Court Nassau County 2024) (hereinafter referred to as the "April 2024 Order"). Subsequent to the issuance of the April 2024 Order, the Defendant filed a Notice of Appeal [FN1]
therefrom to the Appellate Division, Second Judicial Department. By Decision and Order on Motion dated July 3, 2024, the Appellate Division, Second Judicial Department, denied that branch of the Defendant's motion seeking to stay all proceedings in the above-entitled action, including enforcement of the April 2024 Order. See F v. F, Motion No. 2024-03495, 2024 NY Slip Op 70506(U) (2d Dept. 2024).

 THE PARTIES' CONTENTIONS
Plaintiff's Contentions:
The Plaintiff sets forth that the parties set up three 529 accounts during their marriage and the Defendant opened those accounts. She sets forth that the Defendant titled all three accounts in his name and listed himself as the beneficiary of one of those accounts, listed her as the beneficiary of the second account, and listed their daughter, A, as the beneficiary of the third account. She argues that as the parties have three daughters, and there were three accounts, the purpose was to save for the future education of the children. She argues that the Defendant, at his deposition, in effect, testified that there would be "plenty of money" for their children's college education. She sets forth that the 529 account which was opened first [FN2]
had grown to at least $162,000.00 until, earlier this year, the Defendant withdrew $150,000.00 from same. She argues that while the Defendant may be the "title" owner, the money was meant for the children. She argues that even if the children are not found to be the owners of the account, the money was being held for their education, and they should, in effect, be deemed to be the beneficial owners of the accounts. She argues that since the 529 account is a tax deferred account, the Defendant was not permitted to withdraw money from the account absent her consent or Order of the Court. She argues that the Defendant should be further restrained from withdrawing from any other 529 account. She argues that even if the 529 accounts are owned by the Defendant, then he is diverting marital property for his own use.
Defendant's Opposition:
The Defendant contends that his withdrawal of $150,000 from a 529 account was permissible under the automatic orders, as it was for counsel fees relating to this divorce action, [*3]his appeal of the April 2024 Order and in defense of a federal lawsuit commenced by XXX Group against him. He argues that he has outstanding legal fees of $150,000 relating to this case. He argues that the instant motion is part of the Plaintiff's litigious modus operandi. He sets forth that he has defended against a "relentless stream of frivolous litigation, initiated and sustained by the Plaintiff, her parents, and her business entities understood to be controlled by her and her extended family". He sets forth that he has incurred $258,000 in counsel fees to his current and prior divorce attorneys and over $275,000 in counsel fees defending the federal lawsuit against him. He sets forth that of the sums incurred, he has paid over $288,000 to date. He argues that XXX Group brought a federal lawsuit against him and has reduced their claim solely to statutory damages awarded at $1,000 per violation which easily could have been brought in small claims court. He argues that the Plaintiff refuses to resolve this motion by Stipulation in which all of her claims would be preserved for trial or settlement. He argues that the 529 account in question from which he withdrew the $150,000 was formed with himself as beneficiary and was used for his career advancement, including a Master's program at John's Hopkins and for paying tuition at Columbia University and Massachusetts Institute of Technology. He sets forth that he contributed to the 529 accounts to take advantage of tax benefits and it was understood that the children's UTMA accounts - which had a combined balance of $758,000 - would be more than sufficient to cover the children's college expenses. He argues that it was not a violation of the automatic orders to withdraw the $150,000 as there is a permissible exception to withdraw money in the usual course of business, for customary household expenses, or for reasonable attorneys fees. He argues that the withdrawal was for the payment of his legal fees. He argues that the federal court action commenced by XXX is related to and inextricably connected to this action because of certain exhibits that were introduced into evidence at the Hearing which resulted in the April 2024 Order. He argues that the Plaintiff has unlimited funds - by virtue of her wealthy parents - to financially outlitigate him. He argues that the appeal of the April 2024 Order is related to this action. He argues that the 529 account at issue is not a tax deferred retirement account and he describes the 529 account with a "primary purpose is for educational expenses". He argues that contributing to the 529 accounts - which he concedes were funded with marital earnings - was to take advantage of yearly tax benefits. He argues that he previously withdrew $3,500 in April of 2022 to pay for a class at MIT and she did not file a contempt motion then. He argues that there is no basis to award the Plaintiff counsel fees, as this could have been resolved by stipulation.
Plaintiff's Reply:
The Plaintiff argues that it is not a coincidence that the parties have three children and they opened-up three 529 accounts, the purpose of which was to save money for their college education. She disputes the Defendant's assertion regarding the UTMA accounts. She sets forth that the Defendant himself advised her that in lieu of making Christmas gifts to the children, family members should consider making 529 donations for the children's benefit. She argues that the Defendant failed to provide actual evidence that he used the money from the 529 accounts to pay his counsel fees. She argues that the Defendant had sufficient money to purchase a home, recently, for in excess of $1,000,000.00. She argues that the federal action is not connected to this action as she is not a party to the federal action.

 DISCUSSION + ANALYSIS
 
 [*4]POST-COMMENCEMENT 529 ACCOUNT WITHDRAWAL

The parties are effectively at odds with the interpretation of the Automatic Orders and whether or not the invasion of a 529 account to pay a party's counsel fees is permissible. Effectively, the Defendant argues that the withdrawal of $150,000.00 from the subject 529 account is a permissible withdrawal under DRL § 236(B)(2)(b)(1), which permits parties from invading certain accounts to pay their reasonable counsel fees. The Defendant effectively wants this Court to treat the subject 529 account as a regular cash or savings account. On the other hand, the Plaintiff argues that the withdrawal of $150,000.00 from the subject 529 account is an impermissible withdrawal under DRL § 236(B)(2)(b)(2), which prevents - absent consent or court permission - a party from withdrawing funds from accounts. The Plaintiff effectively wants this Court to treat the subject 529 account akin to tax deferred funds or retirement accounts.
A. The Statute's Text
Which interpretation is correct? To decide, the Court starts with the text of the statute. See generally Babb v. Wilkie, 589 U.S. 399 (2020). DRL § 236(B)(2)(b) provides, in part:
b. With respect to matrimonial actions which commence on or after the effective date of this paragraph, the plaintiff shall cause to be served upon the defendant, simultaneous with the service of the summons, a copy of the automatic orders set forth in this paragraph. The automatic orders shall be binding upon the plaintiff in a matrimonial action immediately upon the filing of the summons, or summons and complaint, and upon the defendant immediately upon the service of the automatic orders with the summons. The automatic orders shall remain in full force and effect during the pendency of the action, unless terminated, modified or amended by further order of the court upon motion of either of the parties or upon written agreement between the parties duly executed and acknowledged. The automatic orders are as follows:
(1) Neither party shall sell, transfer, encumber, conceal, assign, remove or in any way dispose of, without the consent of the other party in writing, or by order of the court, any property (including, but not limited to, real estate, personal property, cash accounts, stocks, mutual funds, bank accounts, cars and boats) individually or jointly held by the parties, except in the usual course of business, for customary and usual household expenses or for reasonable attorney's fees in connection with this action.
(2) Neither party shall transfer, encumber, assign, remove, withdraw or in any way dispose of any tax deferred funds, stocks or other assets held in any individual retirement accounts, 401K accounts, profit sharing plans, Keogh accounts, or any other pension or retirement account, and the parties shall further refrain from applying for or requesting the payment of retirement benefits or annuity payments of any kind, without the consent of the other party in writing, or upon further order of the court; except that any party who is already in pay status may continue to receive such payments thereunder.
(emphasis added).
The well-established rules of statutory construction direct that the analysis begin with the language of the statute. Colon v. Martin, 35 NY3d 75 (2020). The statutory text is the clearest indicator of legislative intent. Matter of Walsh v. New York State Comptroller, 34 NY3d 520 (2019). In interpreting statutory language, all parts of a statute are intended to be given effect and [*5]a statutory construction which renders one part meaningless should be avoided, and a statute must be construed as a whole and its various sections must be considered together and with reference to each other. Matter of Anonymous v. Molik, 32 NY3d 30 (2018). Courts should construe unambiguous language of a statute to give effect to its plain meaning. Desrosiers v. Perry Ellis Menswear, LLC, 30 NY3d 488 (2017). When the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms. Dodd v. United States, 545 U.S. 353 (2005).
In the absence of a statutory definition, words of ordinary import should be construed with their usual and commonly understood meaning. Yaniveth R. v. LTD Realty Co., 27 NY3d 186 (2016). In construing a statute, words must be harmonized and read together to avoid surplusage. Matter of Doyle v. Browning, 194 AD3d 775 (2d Dept. 2021). The primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature. Matter of People ex rel Subramaniam v. Annucci, 227 AD3d 26 (1st Dept. 2024). Where the legislative intent is clear and unambiguous from the language of the statute, the words used should be construed so as to give effect to their plain meaning, and resort to extrinsic evidence, such as the legislative history of the statute, is inappropriate (see McKinney's Cons Laws of NY, Book 1, Statutes § 120). People v. Cypress Hills Cemetery, 208 AD2d 247 (2d Dept. 1995).
The Second Department has ruled that the Automatic Orders constitute unequivocal mandates for purposes of holding a party in civil contempt. Spencer v. Spencer, 159 AD3d 174 (2d Dept. 2018). Any contention to the contrary is not at issue here. In Spencer, the Second Department also noted that the express purpose of the Automatic Orders is to preserve the status quo of, among other things, property individually or jointly held by the parties and by prohibiting the transfer or encumbrance of real and personal property and retirement funds. Spencer, 159 AD3d at 181. It has been the view of this Court that the purpose and justification of the enactment of the automatic orders was the help redress the problem of the dissipation of assets which may have monetary value, as the Legislature sought to dissuade matrimonial litigants from purposefully invading assets in an attempt to reduce the share of the other spouse. C.M. v. E.M., 82 Misc 3d 198 (Supreme Court Nassau County 2023). Tangentially, it cannot be reasonably disputed that the law favors the preservation of marital assets. Weinstock v. Weinstock, 8 Misc 3d 221 (Supreme Court Nassau County 2005); See also Stratton v. Stratton, 39 Misc 3d 1230(A) (Supreme Court Sullivan County 2013); see also C.M. v. E.M., supra. Indeed, in order to protect the expectancy of an interest in property, to maintain the status quo, and to prevent the dissipation of marital property, the court must be able to issue orders to ensure that such marital property is protected should it later become the subject of equitable distribution. Nederlander v. Nederlander, 102 AD3d 416 (1st Dept. 2013). That if, of course, must be balanced against a litigant's right - under DRL § 236(B)(2)(b)(1) - to pay his or her reasonable counsel fees. The question for the Court therefore turns on how to treat a 529 account.
B. Defining a 529 Account
Where does the Court look to define a 529 account? The Court derived the following summary from the website 
www.nysaves.org. A 529 account is a type of investment account that someone can use for higher education savings (emphasis added). 529 plans are usually sponsored by states. The title or name - "529" account - comes from Section 529 of the Internal Revenue [*6]Code, which specifies the plan's tax advantages. What makes 529 accounts powerful savings vehicles is tax savings. Earnings grow federally tax-deferred, qualified withdrawals are tax-free, and some states, including New York, have other tax benefits (emphasis added). Just about anybody can open a 529 account, such as parents, grandparents, other relatives, and friends. The account owner picks investments, assigns a beneficiary, and determines how the money is used. If you're a New York State taxpayer, the taxpayer can also benefit from the state tax deduction. The beneficiary is the future student, or the person for whom the account was opened for. The account can be opened for a child, grandchild, friend, or even the party opening the account. The money in the account can be withdrawn for other uses, but there is a 10% penalty tax on earnings (as well as federal and state income taxes) which may apply if the money is withdrawn to pay for nonqualified expenses.
See https://www.nysaves.org/home/basics-of-529s/529-basics.html.
Additionally, according to the Office of the New York State Comptroller:
The best line of defense against the rising cost of higher education is to start saving early. The 529 College Savings Program helps you do just that. Just about anybody can open a 529 account — parents, grandparents, other relatives, friends — as long as he or she is a U.S. citizen or a resident alien.
Earnings on your contributions grow tax free and withdrawals are not taxed if used for qualified educational expenses. If you're a New York State taxpayer, you can also benefit from the state tax deduction.
See https://www.osc.ny.gov/savings. (emphasis added).
According to the Internal Revenue Service:
Q. What is a 529 plan?
A. A plan operated by a state or educational institution, with tax advantages and potentially other incentives to make it easier to save for college and other post-secondary training, or for tuition in connection with enrollment or attendance at an elementary or secondary public, private, or religious school for a designated beneficiary, such as a child or grandchild.
See https://www.irs.gov/newsroom/529-plans-questions-and-answers. (emphasis added).
C. 529 Accounts are Tax-Deferred Accounts
Is a 529 account a regular savings account? Or is a 529 account a tax deferred asset? The Court finds the latter to be true. In a decision from the Nassau County Supreme Court in 2017, A.I. v. V.I., Justice Jeffrey Goodstein wrote:
"...[a]ccording to the plan administrator...and NYSAVES.GOV, a 529 Account is an asset of the custodian and not the child beneficiary, which provides certain tax benefits to its creator. The overriding purpose of a 529 Account is to ensure that the funds are preserved and passed to a child for proper educational purposes, and there can be penalties and tax implications assessed by the Internal Revenue Service when a deviation from that purpose occurs.
A.I. v. V.I, 2017 NYLJ LEXIS 3595 (Supreme Court Nassau County 2017) (emphasis [*7]added). 529 college savings accounts are funded with tax-deferred dollars for qualified tuition programs. See Tucker v. Tucker, 67 Misc 3d 1217(A) at fn. 1 (Supreme Court Monroe County 2020). In 2019, in Messinger v. Messinger, in adjudicating an application to determine whether or not parents should contribute to a child's college education costs, Justice Richard Dollinger considered, among other things, evidence of an intent to finance the child's college education, noting:
"...[t]he couple advanced funds to a 529 account and there are marital funds available in that account to help finance the daughter's college education. Having saved tax-deferred funds to finance higher education when their daughter attended public high schools is evidence that the parties intended to finance college costs for their children..."
Messinger v. Messinger, 66 Misc 3d 1222(A) (Supreme Court Monroe County 2019) (emphasis added). See also D.S.C. v. P.C., 68 N.Y.S.3d 378 (Supreme Court Monroe County 2017) (writing that 529 college savings accounts are funded with tax-deferred dollars). Other States and jurisdictions have also noted that 529 accounts are tax deferred savings. See Brooks v. Brooks, 231 A. 3d 1 (Superior Court of Pennsylvania 2020) (writing "...[a] 529 account...is a mechanism for tax-deferred savings for educational expenses..."); see also Upromise, Inc. v. Angus, 2014 WL 212598 (U.S. District Court for District of Massachusetts 2014) (writing "...[q]ualified tuition plans, or "529 plans," named after Internal Revenue Code Section 529, are tax-deferred investment accounts used to pay for college expenses..."); see also Leonova v. Leonov, 201 Conn. App. 285 at fn. 16 (Appellate Court of Connecticut 2020) (writing "...[t]itle 26 of the United States Code, § 529, provides for the creation of an account specifically designed for higher education related qualified expenses. Earnings on contributions invested are tax deferred and withdrawals are tax free when used for qualified educational expenses..").
The Defendant contends that the statute contains "...legal language ambiguity..." (see Defendant's Affidavit ¶ 3). The Court finds no such ambiguity. Given that a 529 account can be used as an investment vehicle with tax benefits for higher education savings, and since earnings can grow federally tax-deferred, it is a perfectly reasonable and logical interpretation of the text of the Automatic Orders to conclude that a 529 account is a tax-deferred asset and therefore should be treated under DRL § 236(B)(2)(b)(2), which, proscribes withdrawals therefrom (absent court order or written consent) for any purpose. The Legislature, when adopting DRL § 236(B)(2)(b)(2), clearly did not include tax deferred funds in DRL § 236(B)(2)(b)(1), which section permits such withdrawals for reasonable counsel fees. Therefore, this Court cannot conclude that the Legislature intended to permit matrimonial litigants to be able to withdraw monies from tax-deferred 529 account to pay their reasonable counsel fees during the pendency of a matrimonial action.
D. Other Factors Considered
The Court rejects the Defendant's argument that his $150,000.00 withdrawal from the 529 account was permissible in light of other facts. First, the Court has considered the purpose of the 529 account. As the Defendant testified at his deposition on May 6, 2022:
Q: When you have an opportunity, Mr. F, tell me, if you can identify, these documents as three different 529 accounts. (Handing.)
A: (Reviewing.)
MR. CHOU: Just for the record 529 Account 9601 is being put in as Exhibit 15 for the plaintiff; 9602 is Exhibit 16 for the plaintiff; and then 9603 is Exhibit 17 for the plaintiff.
Q: Let's start with 9601. Do you see it?
A: Yes.
Q: Do you know when this was first created?
A: Before A was born.
Q: Before A was born?
A: Yes.
Q: So —
A: 2014.
Q: Was this created for A's benefit?
A: I actually may have done it in 2013. Again, I don't recall exactly. But I think when I got married, I opened this up in expectation of having children and taking the tax benefit in 2013.

 * * *
Q: Let me just go back for one thing. I thought I heard you say with respect to the first one that you created this in anticipate [sic] of the birth of your child.
A: Yes. That was one element. It's a good tax write-off. The fact — this is how I think of it, the fact that you can change the beneficiary once per year, means that you can use it for whoever needs the money. For example, like, I have one nephew who I am the godfather of. And they don't have as much money as my kids. So that might be a nice way to provide for my sister's kid, who's my godchild.

 * * *
Q: So $10,000.00 a year starting now, you project that there will be plenty of money for your daughters' college education; is that how you conceptualize it?
A: Yes. So SP-500 returns like, what, 12 to 13 percent a year. We night not have gotten there. But also having three accounts in theory we could have gotten close. And in theory we could have persuaded R to put money in too or any of our other family members. For example, my sister-in-law Er and her husband, M, made a contribution that was small.
Q: To these accounts?
A: Yeah. Like 500 bucks.
The Defendant's testimony at his deposition indicates an intention to open and fund the 529 accounts for the benefit of his future children and for tax purposes, or, in the alternative, for the benefit of his godson. It is clear that the intent of the creation of the 529 account(s) was to save enough money to fund all of, or most of, their daughter's college education. This clearly buttresses the Court's conclusion that the Defendant understood the tax benefits of the 529 account. Second, the Defendant's own sworn testimony at his deposition reflects that it was the intent of the parties to utilize the monies in the 529 account(s) not for customary or ordinary [*8]living expenses, but only for educational purposes. The testimony surrounding his pre-commencement withdrawals reflects this conclusion. As the Defendant testified:
Q: Is that why on the statement you are listed as both the account owner and beneficiary because you didn't have a child to list as a beneficiary at the time you opened it?
A: That's one of many reasons.
Q: Try me on for a couple more.
A: Sure. I also use the account. I used this for Columbia because I have education expenses. And the beneficiary is allowed to be changed once per year.

 * * *
Q: During what period of time did you incur your Columbia educational expenses?
A: 2019 and then 2011 [sic]. So I am talking about 2019. I also applied to Johns Hopkins in 2015. And I took out the application fee from this.
Q: So how much was withdrawn from this account to the best of your recollection to pay for your Columbia bachelorette [sic]? Is that what it was?
A: No. That was the programming boot camp from Columbia engineering. Maybe $4,000.00, $5,000.00. I don't remember exactly.
Here, the Defendant's testimony reflects that while he may have utilized some of the monies in the 529 account, he used those monies solely for his educational expenses. The Court therefore cannot conclude that, during the parties' marriage, the parties utilized the 529 account to pay their usual or customary living expenses Indeed, as the Defendant himself concedes, "...[i]t pained me to withdraw these funds from the 529 Account to pay for litigation expenses after meticulously saving and investing for seven years..." (see Defendant's Affidavit ¶ 19). To this point, it is clear to the Court that the 529 account at issue was being utilized as a tax-advantaged and tax-deferred investment. Third, the Defendant's post-commencement withdrawals from the 529 account also reflect that they were made (prior to the $150,000.00 withdrawal) solely for educational purposes, and not for any other purpose. As the Defendant further testified:
Q: Have their been any deposits or withdrawals to this account from then — from March of 2021 until today?
A: Yes. I just signed up for a class at M.I.T. So I took out $3,500 from here.
Q: Okay. When did you do that?
A: Last week.
Q: What kind of class at M.I.T. did you sign up for?
A: Block chain business applications.
Q: Can you explain to the court reporter what that means?
A: So I work in cryptocurrency. I work for a cryptocurrency broker. And I am pivoting in my career from equities into cryptocurrency. I spend about 20 percent of my time covering equities and 80 percent in crypto.
The Defendant's testimony at his deposition reflects that he made post-commencement withdrawals for his educational purposes. His testimony does not reveal that funds were [*9]withdrawn from the subject 529 account for usual, customary or ordinary day-to-day living expenses. Indeed, as the Defendant concedes in his Affidavit:
"9. The 529 Account in question (i.e., Account No. 4296-01) from which I withdrew $150,000 was formed with myself as beneficiary and, as evidenced by my withdrawals pre and post-commencement of this divorce, was used for my career advancement, including applying to a Master's Program at John's Hopkins University, paying tuition to Columbia University, and paying tuition to the Massachusetts Institute of Technology..."
Fourth, the Defendant's use of the $150,000.00 would have been, in any event, partially at variance with the text of DRL § 236(B)(2)(b)(1), had the Court adopted the Defendant's argument that the withdrawal was a permissible one. The Defendant contends:
"I respectfully submit that my withdrawal of $150,000 from the 529 Account 4296-01 ("529 Account") was for the permissible uses under the Automatic Orders to pay for my counsel fees both in this instant divorce, the appeal relating to the divorce of Decision and Order after Hearings on Motion dated April 4, 2024...and in defense of the RLO Federal Lawsuit which arose solely in connection with documentary exhibits admitted by Plaintiff's counsel during the classification hearing held before this Court regarding Plaintiff's Interest in RLO obtained during our marriage".
See Defendant's Affidavit ¶ 2.
The Defendant then argues that there is a legal language ambiguity on what constitutes "...reasonable counsel fees in connection to this action..." (emphasis in Affidavit) (see Defendant's Affidavit ¶ 3). The Court disagrees, and the Defendant misquotes the actual Automatic Orders which were served in this action, which read, in part:
(1) Neither party shall sell, transfer, encumber, conceal, assign, remove or in any way dispose of, without the consent of the other party in writing, or by Order of the Court, any property (including, but not limited to, real estate, personal property, cash accounts, stocks, mutual funds, bank accounts, cars and boats) individually or jointly held by the parties, except in the usual course of business, for customary and usual household expenses or for reasonable attorneys' fees in connection with this action..."
(emphasis added)
The statute, contrary to the Defendant's claims, does not permit the withdrawal of funds for counsel fees in connection "to" this action. Such an "authorized" withdrawal is only for counsel fees in connection with this action (emphasis added). Therefore, even if the Court found that the $150,000.00 withdrawal from the 529 account at issue was a permissible withdrawal to pay reasonable counsel fees (and the Court is not making such a finding, see supra), in any event, the Defendant would only have had a right to use the withdrawn money for counsel fees in this matrimonial action. He would not have, on the other hand, had the authority to use those monies to pay for the prosecution of his appeal of the April 2024 Order which is in another Court, to wit: [*10]the Appellate Division, Second Department,[FN3]
nor would he have had the authority to use those monies to pay for the defense of a separate federal court action in another Court, to wit: Federal Court, of which the Plaintiff herself is not a named party thereto.
Fifth, while the Defendant appends his invoices from his counsel in the matrimonial action and from his counsel in the federal court action, his papers are barren of actual proof that the $150,000.00 was actually paid to those attorneys. There is no proof of what account the $150,000.00 was deposited into, nor is there actual proof of from what account, or on what credit card, those counsel fees were charged. Sixth, the Defendant concedes that three (3) 529 accounts were opened during the parties' marriage, including the 529 account at issue, to wit: account ending xxx9601 (see Defendant's Affidavit ¶ 8(a)).[FN4]
Additionally, the Defendant concedes that "...I do not dispute that these accounts were opened during our marriage and that they were funded with marital earnings (with the exception of $3,200 deposited into the 529 Account No. Xx96-01 which was funded with my post commencement earnings) (see Defendant's Affidavit ¶ 22) (emphasis added). Therefore, these tax-deferred funds in the 529 account, opened during the parties' marriage, are unavailable for the payment of reasonable counsel fees in this action, absent an Order of this Court or written agreement of the parties.
E. Contempt of Court
A contempt citation is a drastic remedy which should not be granted absent a clear right to such relief. Pinto v. Pinto, 120 AD2d 337 (1st Dept. 1986); Usina Costa Pinto SA v. Sanco Sav Co. Ltd., 174 AD2d 487 (1st Dept. 1991); See also Board of Mgrs. of the Empire Condominium v. Attwood, 2014 NY Misc. LEXIS 2265 (Supreme Court New York County 2014). As the Court of Appeals wrote in El-Dehdan v. El-Dehdan, explaining the elements of civil contempt:
First, it must be determined that a lawful order of the court, clearly expressing an unequivocal mandate, was in effect. Second, it must appear, with reasonable certainty, that the order has been disobeyed. Third, the party to be held in contempt must have had knowledge of the court's order, although it is not necessary that the order actually have been served upon the party. Fourth, "prejudice to the right of a party to the litigation must be demonstrated.
El-Dehdan v. El-Dehdan, 26 NY3d 19 (2015) (internal citations omitted). Here, given the paucity of case-law on the issue, the Court declines to invoke the drastic remedy of contempt (see Pinto v. Pinto, supra) at this time. However, the Court elects to invoke a remedial measure to ensure the preservation of assets, and the Court therefore directs the Defendant to replenish the [*11]monies withdrawn.[FN5]
That remedy, at this time, is the most equitable, and is remedial in nature, which is designed to protect and preserve assets, something certainly within the purview of this Court's broad discretionary authority pendente lite.
F. Miscellaneous
As an aside, and practically speaking, it is this Court's opinion that accounts which parties have agreed should be earmarked for the education of their children should not be liquidated during a matrimonial action to underwrite litigation costs. That would set a dangerous precedent.
G. Conclusion
Accordingly, for all of the reasons stated herein, and after weighing all of the facts and circumstances herein, it is hereby:
ORDERED, that Branch (1) of the Plaintiff's Order to Show Cause dated May 3, 2024 be and is hereby DENIED; and it is further
ORDERED, that Branch (2) of the Plaintiff's Order to Show Cause dated May 3, 2024 be and the same is hereby GRANTED TO THE EXTENT that the Defendant is hereby restrained and enjoined from making any further withdrawals from any of the 529 accounts without the consent of the Plaintiff in writing, or upon further order of the Court; and it is further
ORDERED, that Branch (3) of the Plaintiff's Order to Show Cause dated May 3, 2024 be and the same is hereby GRANTED, and, within thirty (30) days of the date of this Decision and Order, the Defendant shall return the sum of $150,000.00 to the 529 account (account ending xxx96-01).
COUNSEL FEES
The Court is constrained to deny the Plaintiff's application for reimbursement of counsel fees without prejudice as defective. The Plaintiff has failed to append a copy of her retainer agreement with counsel, and she has failed to append a copy of her invoices/statements for services rendered. See generally F.J.O. v. M.I.O., 76 Misc 3d 1207(A) (Supreme Court Nassau County 2022). The Plaintiff's attempts to cure that defect - the failure to append her invoices/statements for services rendered - in reply is disregarded, as courts cannot consider new evidence in reply papers. See generally KXK Foods Corp. v. Ta-Chiun Chou, 16 Misc 3d 1111(A) (Supreme Court Kings County 2007). Accordingly, it is hereby:
ORDERED, that Branch (4) of the Plaintiff's Order to Show Cause dated May 3, 2024 be and the same is hereby DENIED WITHOUT PREJUDICE and with leave to renew upon the submission of proper papers.
Any other relief requested not specifically addressed herewith is hereby DENIED.
This constitutes the DECISION AND ORDER of this Court.
Dated: December 9, 2024
Mineola, New York
E N T E R :
Hon. Edmund M. Dane, J.S.C.

Footnotes

Footnote 1:See NYSCEF Document No.: 151.

Footnote 2:Account number ending xxx9601.

Footnote 3:The Defendant alleges that he used this money, in part, to pay a $12,000.00 retainer to his counsel in the prosecution of the appeal of the April 2024 Order.

Footnote 4:Generally speaking, property acquired during the marriage is presumptively marital. See generally Heine v. Heine, 176 AD2d 77 (1st Dept. 1992).

Footnote 5:The Court notes that, had it adjudicated the Defendant to be in contempt of court at this time, it would have, in any event, been required to set a purge condition. The court is vested with broad discretion in determining appropriate conditions upon which a contemnor may purge the contempt. Midlarsky v. D'Urso, 133 AD2d 616 (2d Dept. 1987). That "purge" condition likely would have been the return of the $150,000.00 to the 529 account within a date certain.